CENTRAL OIL & GAS STOVE CO. v. SILVER & CO. et al.

(Circuit Court, E. D. New York. April 8, 1909.)

PATENTS (§ 328*)—INFRINGEMENT—OIL BURNERS.

The Wilder patents, No. 653,893 and reissue No. 11,905 (original No. 595,231), both for improvements in oil burners of the wickless type, where the combustion takes place at the surface of the oil, the improvements consisting of raising and lowering the oil in the holder to facilitate ignition, are valid as limited to the particular means shown, but not as covering the result by whatever means accomplished. As so construed, *held* not infringed.

[Ed. Note.—For other cases, see Patents, Dec. Dig. § 328.*]

In Equity.

William Wallace White (C. H. Duell, of counsel), for complainant. Stephen J. Cox, for defendants.

CHATFIELD, District Judge. The complainant is the assignee of the rights of one William H. Wilder, who, on the 17th of July, 1900, took out a patent, No. 653,893, for what he declares to be new and useful improvements in oil burners, designed to provide a burner for an oil stove, in which vapor is generated from the surface of the oil, in a suitable holder, thus avoiding the necessity of a combustible wick, which would supply the oil by capillary attraction, and thus also avoiding the use of a burner having as its fuel vapor generated in a vapor holder, as distinguished from a holder in which the burning takes place at or immediately above the surface of the oil.

Three styles of burners or oil stoves, as classified according to the above-named divisions, will be explained more at length later in the opinion. The Wilder patent, in its specifications and claims, covers not only the particular form of burner designed for combustion upon the surface of the oil itself, but also means for quickly filling or flooding the burner of the kind described, and then for withdrawing this extra supply of oil, thus making ignition easy. In a large number of the claims Wilder describes different styles of combustion chambers, and other elements of what may be called the burner and stove, with which we have nothing to do in this suit.

Claim 5 of the particular patent in question is as follows:

"In an oil burner, an oil holder and an oil supply with means for causing the oil to flood the holder for igniting purposes while maintaining the feed of oil."

Claims 15, 16, 17, and 18 also call for a valve controlling the supply of oil, to be used in conjunction with a burner of the kind and description previously stated in the patent.

Upon the 9th of April, 1901, William H. Wilder and Helen M. Wilder, his assignee, obtained a reissue, under No. 11,905, of another patent, issued under date of December 7, 1897, No. 595,231, and this reissue patent was later registered in the name of the Central Oil & Gas Stove Company, as assignee; the Central Oil & Gas Stove Company having obtained by assignment the rights to the invention therein described.

This second patent, as reissued, states that the object of the invention

is to provide a stove in which the burner and oil reservoir are adjustable in relation to each other, so that the oil level in the fuel holder of the burner may be raised or lowered. The patent relates to a burner of the nature described in the earlier patent above referred to, and both in the drawings and in the specifications of this reissue patent a valve is inserted, adjoining the oil burner, or each oil burner, if more than one is employed, which valve is substantially the same as that described in the earlier patent. In the reissue patent, also, it is stated that the oil chamber may be made adjustable with relation to the burner, or that the burner may be adjustable in relation to the oil chamber, for the purpose of raising or lowering the oil level in the fuel holder of the burner, for the purpose of using the invention claimed in the patent, and Mr. Wilder further states that "oil" is intended to include any kind of liquid fuel.

Claims 9, 10, and 11 are shown by the pleadings and the testimony to be those with reference to which the defendant's stoves are alleged to be an infringement, and claim 9, which for the purposes of this suit raises substantially the same questions as claims 10 and 11, is as follows:

"9. An oil stove, comprising a reservoir having a maintained oil level, a liquid fuel holder in communication therewith in which the fuel freely rises, said parts having movement to secure a proper adjustment for normal burning, where in the oil level in the reservoir will be the level of the oil in the fuel holder, and means intermediate of the oil reservoir and fuel holder for controlling the depth of oil in the holder below its level at said normal burning, substantially as described."

The defendant has been in the business of manufacturing and selling oil stoves for a period commencing before the issue of either of these patents, and, as appears by the testimony, was defendant in a previous action, in which it was shown that a certain type of stove, in which both the oil burner and the oil reservoir could be raised or lowered, then manufactured by the defendant, was an infringement of one of Wilder's patents, and by consent the complainant had a decree therefor. It further appeared from the testimony that during the interval between December 7, 1897, and April 9, 1901, an interference proceeding in the Patent Office, brought by one Blackford, resulted in substantial changes in the claims of the Wilder patent as finally issued, and the defendant here maintains that new and additional claims were inserted, making the reissue an abandonment of certain features of the original application, and thus estopping Wilder, or his assignees, from claiming patentability or actionable infringement, so far as the abandoned details are concerned.

A description of the Wilder patent and of the defendant's stoves must be made at the outset, and it must be borne in mind, when considering these descriptions, that the defendant claims not only to be manufacturing an oil stove with burners of an old and well-known type, and with valves of a well-known and hence unpatentable design and use, but also that the defendant charges that the Wilder patent, while attempting and purporting to describe particular devices, is in reality seeking to patent the idea or theory made use of in the application of those devices, and that the complainant's patent is, therefore, invalid

in this respect, under the authority of such cases as Bradford v. Expanded Metal Co., 146 Fed. 984, 77 C. C. A. 230, and O'Reilly v. Morse, 15 How. 62, 14 L. Ed. 601.

But to return to the description of the patents and stoves of the parties to the action. The first Wilder patent, that of July 17, 1900, shows a reservoir from which oil is fed into a chamber containing a piston or plunger, in which chamber the oil normally stands at the same level as the oil in the burner or oil holder before ignition. The oil holder or burner is so constructed that by means of the plunger or piston the supply of oil can be quickly increased and as quickly drained or withdrawn; the amount of oil left in the burner after such movement of the plunger being sufficient to cause immediate vaporization, for the purpose of ignition. After ignition, the level of the oil in the burner will normally adjust itself, according to the supply of the oil, upon the student lamp principle; but this supply can be further regulated and controlled, or entirely shut off, by means of a valve, which, as has been said, is shown in the drawings and specifications.

Neither of the Wilder patents ascribes any particular function, in the process of flooding the oil burner, to this valve, and its use is not stated or shown to be any different from that of the valves which earlier patents disclose to have been in common use in stoves of this character. The reissue patent, as well as the patent on which the reissue was asked, shows a method of raising the oil reservoir or holder by means of ratchets or serrated triangular pieces, affixed to the storage chamber of the reservoir, or other similar means, by which this storage reservoir can be arbitrarily raised or lowered, thus raising or lowering the level of the oil in the oil burner, and thus accomplishing the flooding purpose made use of in the former patent, and therein caused by the movement of the plunger.

Wilder also claimed the right, as has been said, to raise or lower the burner relatively to the reservoir, for accomplishing the same purpose, and this alternate method of construction furnished the basis upon which the stove previously made by the defendant was admitted to be an infringement in the action then brought. It will be seen that Wilder has thus, in his second or reissue patent, sought to protect the idea of furnishing quickly a large supply of oil to the burner, thus obtaining sufficient vaporization for ignition without delay, by raising and lowering the level of the oil in the oil holder, through the change in the level of the oil in the reservoir, or vice versa, and accomplishing exactly the same result as in the first patent was obtained by a separate device, which he called and which we have described as a plunger.

It is apparent that a valve controlling the supply of oil to the burner will to a certain extent allow the passage of a quantity of oil into the oil chamber or burner by the opening of the valve, and that if the level which would be maintained when the valve is opened is such that the burner would be substantially or entirely flooded, and then after ignition the valve should be closed, and by combustion the level of the oil in the oil burner reduced, the ultimate adjustment of the flame and the supply would leave the level of the oil in the burner substantially the same as that which would be maintained in a burner constructed un-

der the Wilder patent, with the use of either the plunger or the device for raising and lowering the oil supply.

Mr. Wilder, because of his considerable experience in making and experimenting with oil stoves and burners, was called as a witness by the complainant, and testified most fluently both as to the details of the patent in question and as to experimentation in relation to the devices referred to in these patents. One portion of Mr. Wilder's testimony is especially instructive, and that is the part relating to the development of the industry of manufacturing gas stoves through the various stages of (1) a stove with a combustible wick; (2) a stove with no wick, but having a large flame ignited in the combustion chamber, from vapor produced by introducing the oil or burning fluid into the vaporization chamber in small quantities; and (3) a burner by which this vaporization could be caused immediately in connection with the surface of the oil, with much better results than by the other methods. Wilder's statements of the progress of the art would seem to follow more closely the commercial or practical development of stove making than any theoretical experimentation, except as such experimentation followed the commercial necessities; and his testimony, while very complete and enlightening, does not have the same effect upon the mind of the reader as the testimony of an expert who has gained his knowledge solely from the documents or from direct experiments in the laboratory.

It is apparent from Mr. Wilder's testimony that his opinions and ideas have been continuously formed from a large number of sources, and how much has been derived from business, and how much from the study of patents, it is impossible to determine. The general effect, however, of his testimony, would seem to be that, combining the needs and desires of the manufacturer with the technical knowledge acquired from study, he endeavored to obtain the essential principles of the stove which he was placing upon the market, without reference to whether the particular idea which he was using was patentable; and thus, without confining his claims to a combination which should produce a certain result, he has rather attempted to patent the result, and thereby all means for its production, and it would seem that the state of the prior art was such as to hinder him from obtaining more than the right to control the particular methods by which he in practice found that he could produce the result desired.

The complainant has introduced in evidence a stove, called the "Pilgrim stove," which combines the principles of these patents in an original way, but one which has some features that would throw doubt upon its commercial success. In the Pilgrim stove the student lamp principle is used, in the form of an oil reservoir connected with the burner by a fixed pipe, and with a valve in this pipe near each burner; the burners themselves being of the form described in the patent, namely, a trough, in which the oil, with the valves open, would normally stand at the same level as in the oil reservoir, when the stove is unlighted. In order to change the oil level, a flexible pipe, with a siphon leading into the oil reservoir, runs to a tank substantially on a level with the oil reservoir, and maintained in position by a spring, giving more or

less vertical freedom of motion. The flow of oil into the oil reservoir is controlled by a weight, which is moved along the flexible pipe, and thus the tank is raised or lowered. If the tank be raised, the supply of oil into the reservoir will increase, the level of the oil in the burner will be raised, and the burner flooded, while a lowering of the tank would cause the draining of the burner by the opposite process. The flexible pipe and spring, with the movable weight, appears to be a clumsy and easily broken device, and there is no evidence to show whether it has succeeded in commerce; but it is a plain illustration of the principles of the Wilder patents.

The defendant's stove, on the other hand, makes use of many of the same principles, most of which are not only well known, but old, in connection with both gas stoves and lamps, and the points in which this stove is said to infringe the Wilder patent are easily ascertained. In the first place, the defendant's stove makes use of the student lamp principle, by having the oil reservoir fed from a tank which is placed immediately above the reservoir. The pipe leading to the burners is stationary, and the burners are of substantially the same type as the burner used in the Wilder stove, in which the burners are intended to operate by the ignition of the oil vaporization in the burner, at the surface of the oil supply, as maintained by the repelling force of the flame and gas, at a somewhat lower level than would be the case if the burner were unlighted. The stove has a valve in connection with each burner, and the only method of regulating the supply of oil to the burners in the defendant's stove is by means of those valves, with the exception that the stoves are accompanied by directions to the effect that they should be caused to stand level before lighting. Thus the proper oil level, as it is called, is maintained, and the complainant suggests that a tilting of the stove itself would accomplish the result of flooding, and that thus the Wilder patents would be infringed. Such an accidental happening cannot be called infringement, nor can it be imagined that any practical usefulness could be made of the suggestion that a stove should be tilted and the oil slopped around, in order to lubricate the surfaces which are to be ignited.

Another suggestion of the complainant is that, if the valves were open, the burners would fill; but there seems to be no apparent method of draining them, and, while it is stated in the testimony that the burners could be lighted with safety while the oil holder is filled, the resultant smoke and smell would greatly interfere with the success of the stove. The defendant's own instructions in the pamphlet which accompanied the stove are to the effect that before lighting the valves should be turned open for two or three turns, and thus the asbestos ring, which in these so-called wickless stoves assists in ignition by giving a more or less absorptive wick, even with a noncombustible surface, receives a greater quantity of oil than is maintained when the valve is closed and the constant flow properly adjusted.

As has been said, the idea of a valve is old. The idea of the student lamp is not patentable. The wickless burner—that is, the burner which has just been described—seems to have been determined in other litigation to be either unpatentable, and open to the use of every one, or not the property of the complainant; and the only question which we

must consider is whether the idea of flooding such a wick was originated by Mr. Wilder, and whether he in his claims has stated a device so generic in its use that the result or the object attained by the device should belong to him during the lifetime of his patent, whether produced by one combination or another.

The patent granted to Frank R. Fennessy, on the 21st of April, 1896, No. 558,643, for an invention relating to the automatic feeding of a proper quantity of oil to the oil burner, showed the construction of a float in the supply chamber, into which oil was fed from a tank, and which allowed the passage of the oil to the burner, with the insertion of a valve between the tank and the burner, under the student lamp principle. The float was operated by a stem and knob, and in the specification Fennessy says:

"In starting the ignition at the burner, it is preferable to provide an excess of oil, so that the wick will be thoroughly saturated, and for this purpose the float through its stem may be pushed downward in the chamber, causing a portion of the oil thus displaced to rise in the burner."

This device is much like the plunger in the Wilder patent, but is like defendant's device only in that it recognizes the principle that, upon first lighting, an increased quantity of oil will ignite more easily than a dry wick, be the wick combustible or asbestos. In fact, the Fennessy patent would seem to have been intended for use with a combustible wick, and its lack of practical value was due to the fact that combustible wicks did not need the flooding process, and the idea patented by Fennessy was of no great utility until the wickless burners came in, and the flooding or increased supply of oil before lighting completed the process. In this respect Wilder's testimony seems to be true, and his patent seems to show and fix in point of time an advance in the art. In the same way, even if he is not entitled to the rights over the wickless burner, his patent would seem to be valid, in that it first applied the combination of a forced flooding by such a device as the plunger to these "wickless" stoves.

But, assuming that his patent is valid in this respect, he is making claims which are broader than the use of any particular device, when he attempts to patent as a combination the use of a wickless burner and any increased supply of oil, whether supplied by an old device or not. The defendant makes use of an old device. It takes advantage of the result of any such device, and, if Wilder could patent that result, the defendant's stoves would necessarily infringe. But, in the view which the court has taken, his patent goes only to the extent of protecting for him the methods of flooding in connection with such a burner, by means of the ratchet or other mode of lifting and lowering the oil supply, or of accomplishing the same results through a plunger, and the defendant's structure does not infringe.

Other patents introduced in evidence show various applications of similar ideas, but need not be specifically stated, and the conclusion reached makes it unnecessary to consider whether, by the changes in his reissue patent from the devices contained in its original form, any particular idea was abandoned, and hence lost. Walker on Patents, § 244; Russell v. Dodge, 93 U. S. 460, 23 L. Ed. 973.

The bill will be dismissed.