SCHMERTZ WIRE GLASS CO. et al. v. WESTERN GLASS CO.

(Circuit Court, N. D. Illinois, E. D.  May 13, 1911.)

No. 30,345.

PATENTS (§ 328*)—INFRINGEMENT—PROCESS OF MAKING WIRE GLASS.

 The Schmertz reissue patent, No. 12,443 (original No. 791,216), for an apparatus and process for making wire glass, *held* not infringed by a process which is in effect the three-step process of the prior art.

In Equity. Suit by the Schmertz Wire Glass Company and the Mississippi Wire Glass Company against the Western Glass Company. Decree for defendant.

Arthur J. Baldwin and Drury W. Cooper, for· complainants. ·
Offield, Towle, Graves & Offield, for defendant.

٭For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes·

SANBORN, District Judge. Bill filed March 22, 1911, for infringement of the Schmertz reissue patent, No. 12,443, of January 30, 1906. During the hearing on the accounting under interlocutory decree in the former suit (178 Fed. 977, affirmed 185 Fed. 788), it was found that defendant had modified its process after the former injunction took effect, February 10, 1910, by dispensing with the tension wire-feed described in 178 Fed. 979, and by completing the first layer of glass before the wire is introduced. During the accounting complainants applied to the court to direct the master to take testimony as to this modified process. At that time I thought it was best, and more convenient, to let the master take testimony as to this process, which is now known as defendant's regular one, and the damages and profits, so that a new suit, or a supplemental bill, would not be necessary. Complainants, however, decided to file a new suit. All the evidence was adduced at the hearing, and the case is now to be decided. A view was had of the defendant's process, but by misunderstanding complainants' counsel and experts were not present.

The apparatus and process may be thus described: There is a movable cast-iron table, kept cool by a constant supply of water, two water-cooled rolls, a wire chute or carriage, and long strips of iron-called trangs, a quarter inch thick. The table and rolls are driven by either a steam engine or electric motor, as may be most convenient. Rolls and table move at the same relative speed, controlled by a friction clutch, so that the speed may be increased and diminished at will. The table is run on a railroad, from a point near the lehr, where the glass is annealed, in a southerly direction. The wire chute is similar to the Schmertz apparatus and is run on a track laid slightly above the southerly half of the table track.

The first step is to lay a sheet of wire mesh on the chute, and adjust it parallel to the table by movable collars sliding on the framework of the chute. Two ladles of molten glass are then taken from the furnace, one after another, and the first is poured on the table on the north side of the south roll. Immediately the machinery is started, the table moves south, and the first pour is rolled down into a flat sheet by the south roll, whereupon the power is turned off, and the bottom layer, a quarter inch thick, lies on the table, directly under the wire mesh. The lehr foreman then takes a stick or iron rod, and pulls the north end of the wire to the north until it is over the north end of the bottom layer, and close to the south side of the other or north roll. The end of the wire falls or rests upon the glass sheet and is gripped by the hot layer and firmly held. When the lower layer has cooled off a little, the second pour is made, on the south side of the north roll, upon the north end of the bottom layer and upon the same end of the wire resting thereon. Two workmen then pull the wire carriage quickly backward, towards the south, allowing the wire sheet to fall prone upon the lower sheet, which is now sufficiently cooled off so that it will not grip or hold the wire. While these steps have been going on, the quarter-inch trangs have been so adjusted that the collars of the north or second roll run thereon, and the surface of the roll itself is brought a half inch from

the table, and a quarter inch from the lower sheet. The machinery is now given a reverse motion, the table runs north, towards the lehr, and the second pour is spread over the first, and the wire, until the end of the sheet is reached, and the table is stopped at its extreme north limit. While the upper layer is being rolled, the wire squirms and crawls upon the bottom layer, but adjusts itself properly, because the latter is cool enough not to grip or hold it. A few seconds after the upper layer is completed, the lehr foreman seizes a corner of the completed sheet with a pair of tongs, and pulls it upon a table situated north of the operating table, so as to bring it in front of the lehr. A few seconds later the sheet is pushed into the first lehr furnace, and by successive steps it is moved into diminishingly heated chambers for three hours, when the annealing process is complete, and the glass is ready for polishing. The process of completing a sheet ready for the lehr takes from 30 to 60 seconds.

Some of the steps described may be modified without affecting the result. The wire carriage may be left out, and the wire laid on rods having collars to adjust the wire sheet longitudinally. The stick or rod for pulling the front end of the wire toward the north may be dispensed with, and the north end of the wire sheet allowed to fall on the bottom layer and be gripped thereby. The carriage or wire supports may be allowed to remain in place; the wire being pulled off by the movement of the table, as in the Schmertz process. And the wire may be coiled in a roll and supported by rods instead of being laid out on the chute or other supports. Finally, one roll may be used instead of two; the pours being on its respective sides.

The question is whether this process infringes. Complainants' position is that it simply avoids the terms of the patent while embodying their substance. They also urge that the process reads almost exactly on claims 2 and 6, reading as follows:

"2. An apparatus for making sheets of glass with wire inclosed therein, consisting of a table, a leading roll to roll a layer of glass, means to support and introduce wire to the said layer, a second roll, behind the leading roll, to form a layer of glass on the first or underneath layer, the periphery of the second roll being higher above the table than that of the leading roll, and the two rolls being far enough apart to allow the glass for the second or upper layer to be poured between them."

"6. An improvement in the process of manufacturing wire glass which consists in rolling a sheet of glass of less thickness than the ultimate produce required, simultaneously forcing wire upon said sheet and forming a second sheet of glass upon said first sheet."

On the other hand, defendant insists that they are using the old European three-step process, by first rolling a sheet of glass, placing wire thereon, and rolling a second sheet over the first; the only difference being that by improved mechanical and manual skill the old difficulty of a too rapid cooling is entirely overcome. In fact, it appears that the thing can be done so quickly as to injure the quality of the glass, and that the wire can be placed on the bottom layer while it is too hot, resulting in gripping the wire surface and spoiling the sheet; so that the process has to be slowed instead of hastened.

I was at first inclined to think that defendant's process was in reality simply a variation of Schmertz, a substantial use of his in-

vention; that he showed the way to avoid his own discovery, in terms, or in form, by a process virtually his own, in practical effect. But a careful re-reading of the opinion of the Circuit Court of Appeals in the former case has convinced me to the contrary. Judge Baker says:

"In the ante-Schmertz method there were three steps, separately taken. The cooling of the first layer before the sandwich could be finished prevented the making of large sheets." "The practice and publications regarding the three-step sandwich prevented Schmertz from claiming the sandwich method generically."

As suggested by Judge Gray in the Highland Case, 178 Fed. 944, 962, 102 C. C. A. 316, defendant has by skill and manual dexterity so perfected the European process as to be able to accomplish each of the three steps separately, and entirely overcome the necessity of their being simultaneous.

Bill dismissed.