SCHMERTZ WIRE GLASS CO. et al. v. WESTERN GLASS CO.

(Circuit Court of Appeals, Seventh Circuit. January 2, 1912.)

No. 1,837.

PATENTS (§ 328*)—INFRINGEMENT—PROCESS OF MAKING WIRE GLASS.
     The Schmertz reissue patent, No. 12,443 (original No. 791,216), for an apparatus and process for making wire glass, construed, and *held* not infringed.

Appeal from the Circuit Court of the United States for the Eastern Division of the Northern District of Illinois.

Suit in equity by the Schmertz Wire Glass Company and the Mississippi Wire Glass Company against the Western Glass Company. Decree for defendant (188 Fed. 436), and complainants appeal. Affirmed.

See, also, 178 Fed. 973.

Appellants failed in their suit to hold appellee for an alleged infringement of claims 1, 2 and 6 of the Schmertz reissue patent, No.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

12,443, January 30, 1906, for apparatus and process for manufacturing wire glass.

The claims read as follows:

"1. The process of making glass sheets with wire inclosed therein, consisting in simultaneously forming a layer of glass and introducing wire thereto, and completing the sheet by forming another layer upon the first layer of glass, the process being carried on progressively.

"2. An apparatus for making sheets of glass with wire inclosed therein, consisting of a table, a leading roll to roll a layer of glass, means to support and introduce wire to the said layer, a second roll, behind the leading roll, to form a layer of glass on the first or underneath layer, the periphery of the second roll being higher above the table than that of the leading roll, and the two rolls being far enough apart to allow the glass for the second or upper layer to be poured between them."

"6. An improvement in the process of manufacturing wire glass which consists in rolling a sheet of glass of less thickness than the ultimate product required, simultaneously forcing wire upon said sheet and forming a second sheet of glass upon said first sheet."

Appellee's alleged infringing apparatus and process are described in the finding of the Circuit Court as follows:

"There is a movable cast iron table, kept cool by a constant supply of water, two water-cooled rolls, a wire chute or carriage, and long strips of iron called trangs, a quarter inch thick. The table and rolls are driven by either a steam engine or electric motor, as may be most convenient. Rolls and table move at the same relative speed, controlled by a friction clutch, so that the speed may be increased and diminished at will. The table is run on a railroad, from a point near the lehr, where the glass is annealed, in a southerly direction. The wire chute is similar to the Schmertz apparatus and is run on a track laid slightly above the southerly half of the table track.

"The first step is to lay a sheet of wire mesh on the chute, and adjust it parallel to the table by movable collars sliding on the frame work of the chute. Two ladles of molten glass are then taken from the furnace, one after another, and the first is poured on the table on the north side of the south roll. Immediately the machinery is started, the table moves south, and the first pour is rolled down into a flat sheet by the south roll, whereupon the power is turned off, and the bottom layer, a quarter inch thick, lies on the table, directly under the wire mesh. The lehr foreman then takes a stick or iron rod, and pulls the north end of the wire to the north until it is over the north end of the bottom layer, and close to the south side of the other or north roll. The end of the wire falls or rests upon the glass sheet and is gripped by the hot layer, and firmly held. When the lower layer has cooled off a little the second pour is made, on the south side of the north roll, upon the north end of the bottom layer and upon the same end of the wire resting thereon. Two workmen then pull the wire carriage quickly backward, towards the south, allowing the wire sheet to fall prone upon the lower sheet, which is now sufficiently cooled off so that it will not grip or hold the wire. While these steps have been going on the quarter-inch trangs have been so adjusted that the collars of the north or second roll run thereon, and the surface of the roll itself is brought a half inch from the table, and a quarter inch from the lower sheet. The machinery is now given a reverse motion, the table runs north, towards the lehr, and the second pour is spread over the first, and the wire, until the end of the sheet is reached, and the table is stopped at its extreme north limit. While the upper layer is being rolled the wire squirms and crawls upon the bottom layer, but adjusts itself properly, because the latter is cool enough not to grip or hold it. A few seconds after the upper layer is completed the lehr foreman seizes a corner of the completed sheet with a pair of tongs, and pulls it upon a table situated north of the operating table, so as to bring it in front of the lehr. A few seconds later the sheet is pushed into the first lehr furnace, and by successive steps it is moved into diminishingly heated chambers for three hours, when the an-

nealing process is complete, and the glass is ready for polishing. The process of completing a sheet ready for the lehr takes from 30 to 60 seconds."

Drury W. Cooper, for appellants.

Charles K. Offield and Albert H. Graves, for appellee.

Before BAKER, SEAMAN, and KOHLSAAT, Circuit Judges.

BAKER, Circuit Judge (after stating the facts as above). In Western Wire Glass Co. v. Schmertz Wire Glass Co. et al., 185 Fed. 788, 109 C. C. A. 1 (a controversy between these same parties), we held that the Schmertz reissue patent was valid and was infringed by appellee's apparatus and process for making wire glass under the Jungers patent.

We there sustained the claims now in suit by finding that:

"Schmertz was the first to conceive and devise a combination of a table, two rolls and a wire feed which could be used as a single tool to form simultaneously and consistently the two pours and the wire into wire glass and which could be used progressively to complete the large plates that are demanded in modern buildings."

That definition, whether correct or erroneous, we accept in this case as a conclusive adjudication between these parties in relation to the meaning of the patent. And inasmuch as the Circuit Court received the testimony orally and as there is evidence to support the finding, we also accept that finding as a complete and accurate statement of appellee's present apparatus and method.

Appellee now uses a process in which the "sandwich" is made by three successive and independent steps. After the lower quarter-inch sheet is rolled, the process could be stopped and the sheet used as a commercial plate. When the wire is laid on the bottom sheet, it is not thereby gripped or held and could be lifted off. It is not until the second pour is rolled that the wire is gripped and wire glass formed. This is not the progressive formation of the complete plate of wire glass by the approximately simultaneous or concurrent rolling of the two layers with the wire inclosed between them that is described and claimed in the patent.

Schmertz's apparatus, claimed on the same specification that described his process, of course must be the apparatus by which the process may be carried out. Appellee has in its factory the elements that could be assembled into the Schmertz apparatus. But, according to the finding, such a combination is never made by appellee in carrying out its noninfringing process. While the south roll is spreading the lower sheet the north roll is functionless and might as well be detached. After the wire is laid the north roll, by being elevated on the trangs, is brought for the first time into co-operation with the table, and at the same time the south roll is taken out of the combination. The south roll operates in one direction, the north roll in the opposite direction. Instead of working concurrently and co-operatively as elements in a single tool for making wire glass progressively, appellee's rolls work independently and not even successively, for the operation of laying the wire intervenes. The par-

tial resemblance resulting from appellee's retention of its old double rolls is unimportant when the real nature of Schmertz's apparatus is considered.

The decree is affirmed.