WESTERN GLASS CO. v. SCHMERTZ WIRE GLASS CO. et al.

SCHMERTZ WIRE GLASS CO. et al. v. WESTERN GLASS CO.

(Circuit Court of Appeals, Seventh Circuit. July 28, 1915.)

Nos. 2015, 2021.

1. PATENTS ☞312—INFRINGEMENT—ACCOUNTING FOR PROFITS—EVIDENCE.
    Evidence introduced by complainant on an accounting for profits in an infringement suit *held* competent.

    [Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 544–549; Dec. Dig. ☞312.]

2. PATENTS ☞312—INFRINGEMENT—ACCOUNTING FOR PROFITS—EVIDENCE.
    On an accounting for profits in an infringement suit, a circular issued by another manufacturing concern, relating to the merits of its own apparatus or process, is not competent as evidence of any fact stated therein as affecting the value of the patented apparatus or process in suit; nor is evidence that, after infringement was adjudged, defendant obtained or devised a new apparatus or process, not known to the prior art, to take the place of that of the patent, competent on that question.

    [Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 544–549; Dec. Dig. ☞312.

    Accounting by infringer for profits, see notes to Brickill v. Mayor, etc., of City of New York, 50 C. C. A. 8; Clark v. Johnson, 120 C. C. A. 389.]

3. PATENTS ☞318—INFRINGEMENT—PROFITS RECOVERABLE.
    Where a defendant appropriated and used in their entirety the apparatus and process of complainant's patent in making wire glass, the fact that wire glass was an old product, made long prior to the patent, does not limit the profits recoverable by complainant to those ascertained by a comparison of the patented with the old methods of manufacture, and to the saving or economy effected by the use of those of the patent, when it is shown that the old apparatus and methods were incapable of producing wire glass of the sizes demanded by the modern trade, which at the time could only be produced by the process of the patent.

    [Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 566–576; Dec. Dig. ☞318.]

4. PATENTS ☞318—PROFITS AWARDED FOR INFRINGEMENT—INTEREST.
    Interest is not allowable on profits awarded for infringement of a patent prior to the time the amount has been judicially ascertained.

    [Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 566–576; Dec. Dig. ☞318.]

5. PATENTS ☞318—PROFITS RECOVERABLE FOR INFRINGEMENT—DEDUCTION OF INTEREST ON CAPITAL INVESTED.
    An infringer is entitled to deduction from profits made by the infringement for use of its capital, including plant, invested in the business, to the extent of its actual employment in the infringing operations; and for such allowance interest may be computed on the value thereof, and

apportioned for the share of infringing business, whenever noninfringing business is carried on therewith, and the share of each is ascertainable.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 566–576; Dec. Dig. ☞318.]

Appeals from the District Court of the United States for the Eastern Division of the Northern District of Illinois; Arthur L. Sanborn, Judge.

Suit in equity by the Schmertz Wire Glass Company and the Mississippi Wire Glass Company against the Western Glass Company. From final decree after an accounting, both parties appeal. Modified and affirmed.

For opinion below, see 203 Fed. 1006.

Arthur J. Baldwin and Drury W. Cooper, both of New York City, for plaintiff Schmertz Wire Glass Co.

Albert H. Graves and Charles K. Offield, both of Chicago, Ill., for defendant.

Before BAKER, SEAMAN, and MACK, Circuit Judges.

PER CURIAM (BAKER and MACK, Circuit Judges). These appeals were argued before the late Judge SEAMAN and ourselves. A decree and an opinion giving the views of the court were prepared by Judge SEAMAN, and were handed down. Thereupon the Western Glass Company filed a petition for a rehearing. Upon consideration thereof the three judges concluded that the decree and opinion ought to be somewhat amended. Drafts of these amendments were prepared by Judge SEAMAN; and the survivors of the court as then constituted, after a further review of the case and an examination of the subsequent citations of Dowagiac Co. v. Minnesota Co., 235 U. S. 641, 35 Sup. Ct. 221, 59 L. Ed. 398, and Continuous Co. v. Schmertz Co., 219 Fed. 199, 135 C. C. A. 85, now order that the following opinion and decree, as prepared and as amended by Judge SEAMAN, be recorded as the opinion and decree of the court, and that the petition for rehearing be overruled in all other respects.

Statement of case, prepared by Judge SEAMAN:

These are appeals from a decree of the District Court on an accounting for damages and profits arising from infringement of the patent in suit. No. 2015 is an appeal by the Western Glass Company, defendant below in the infringement suit, for reversal of this decree; and No. 2021 is a cross-appeal by the Schmertz Wire Glass Company and the Mississippi Wire Glass Company, complainants below, for modification thereof.

The decree upon the accounting proceeds under the decision of this court in Western Glass Company v. Schmertz Wire Glass Company et al., reported 185 Fed. 788, 109 C. C. A. 1, for the infringement there adjudged. In the decree below in that suit, which was affirmed on appeal, an injunction having issued, defendant changed its method of manufacture from the so-called "Schmertz process," adjudged to be an infringement to the so-called "three-step process," and this

change was made on February 10, 1910. The complainants below thereupon sued ·for infringement by that method, resulting in a decree of noninfringement ([C. C.] 178 Fed. 973), affirmed by this court (195 Fed. 760, 115 C. C. A. 459). Thus the period of infringement embraced in the present decree terminates on February 10, 1910, pursuant to the ruling in the last-mentioned suit, and the year 1908 is excluded therefrom under an arrangement made between the parties.

The issues on the accounting were referred to and heard by a master, who made an extended report of the testimony and further reported his conclusions, in substance: That, while the defendant had realized profits, they were not proved with sufficient clearness; that a noninfringing process had been open for defendant to use during the entire period of alleged infringement, and that it was not liable for profits; and that no damages could be lawfully imposed. On exceptions to the master's report filed by the complainants below, the matters reported were reviewed by the trial court, resulting in the decree from which this appeal is brought, whereby the conclusions of the master are overruled, and recovery is awarded the complainant for profits amounting to $47,143.84.

In the opinion filed below ([D. C.] 203 Fed. 1006) various claims made for profits and damages are overruled, but the cross-appeal does not assign error upon such exclusions, nor upon the exclusion of claims for damages. The following are stated in the opinion as items and computations which enter into the decree of profits:

"The only question remaining is the amount of profits to be repaid by defendant for its infringement during the two periods before and after the contract term; that is, for 1907, and January 1, 1909, to February 10, 1910. Taking the figures from defendant's account books, and allowing for profits on non-wire glass for 1907 and January 1, 1909, to February 10, 1910, amounting to $16,789.57, the account should, I think, be stated as follows:

| | | |
|---|---:|---:|
| Increase of assets in 1907, less $2,500 paid-in capital.... | $14,139.74 | |
| Increase January 1, 1909, to September 20, 1909, including $18,000 dividends paid......................... | 24,681.38 | |
| Increase September 20, 1909, to February 10, 1910...... | 20,520.92 | |
| Amount expended for patent litigation.................. | 6,630.62 | |
| | $65,792.66 | |
| Deduct profits on non-wire glass during same periods... | 16,789.57 | $49,003.09 |
| Interest at 5 per cent. on net profits of $49,003.09 from July 1, 1909, to April 1, 1913, 3 years 9 months....... | | 9,188.08 |
| Gross amount for profits chargeable to defendant....... | | $58,191.17 |
| Deductions for interest on capital: | | |
| 5 per cent. interest on $72,503.68, capital in 1907, for 1 year........................................ | 3,625.18 | |
| 5 per cent. on $131,797.70, capital January 1, 1909, for 8 months 20 days................................. | 4,729.55 | |
| 5 per cent. on $138,479.08, capital September 20, 1909, for 4 months 20 days............................... | 2,692.60 | 11,047.33 |
| Net sum chargeable to defendant for profits........... | | $47,143.84 |

"The figures for profits on non-wire glass during the infringing periods were taken from the figures found in complainant's brief, page 19. The figures for defendant's gross profits during the infringing period, and for interest on

capital, were taken from the accounting record, pages 621-623. In computing interest in favor of complainants on defendant's net profits on wire glass, July 1, 1909, was taken as an average date between the beginning and end of the infringing period, excluding the year 1908. A decree should be entered for complainants April 1, 1913, for $17,143.84, with costs."

In No. 2015 the Western Glass Company assigns error in respect of the aggregate allowances of profits and not in respect of any items entering therein.

In No. 2021 the cross-appeal assigns error upon the following items entering into the computations of profits, namely, (1) for the deductions stated for interest on capital $11,047.33, as a credit in favor of the defendant; (2) for each of the allowances respectively so credited; (3) for refusal to allow as the net amount chargeable to the defendant the sum of $58,191.17; and (4) for error in allowing "interest to defendant on capital found to have been invested in its business, such capital not being devoted solely to the infringing business."

Opinion of the court, prepared by Judge SEAMAN:

The decree on accounting for infringement, for review of which these appeals are brought, is in conformity with the opinion filed by the District Judge, as reported 203 Fed. 1006. No. 2015 is an appeal by defendant below for reversal of the decree, and No. 2021 is a cross-appeal by the complainants for correction thereof in the award of profits. The fact of infringement is settled by the prior decree, affirmed by this court (185 Fed. 788, 109 C. C. A. 1), and the opinion therein is conclusive in the present issue for interpretation, both of the nature and scope of the invention and of the device of the patent "as a single tool" for carrying out the new process of making wire glass in the "large plates that are demanded in modern buildings"; also that the prior methods and devices in evidence are "neither anticipatory nor limiting" thereof. We believe, therefore, that various contentions advanced in the argument for reversal, as interpretations of the patent in reference to prior devices and processes, are not open to consideration.

[1] I. Upon the defendant's appeal (No. 2015) the assignments of error are predicated on two general propositions against the award of profits as derived from the infringement: First, that the evidence relied upon is incompetent to prove profits realized by the defendant; and, second, that it is entirely insufficient, in any view thereof, to authorize recovery. In reference to the first objection, the evidence introduced by the complainant below embraces the defendant's books of account (as submitted), together with the testimony of the witness Ryon, defendant's secretary, in explanation thereof, and stating from the books the various items upon which the award of profits is predicated. It comprises testimony as well tending to prove that other known (noninfringing) means and processes for making wire glass, which are relied upon by the defendant as open to its use with equal profits, were incapable of producing in commercial quantities the larger sizes of wire glass required by the trade and made by the defendant through the infringement. We are impressed with no doubt

of the competency of both of these branches of evidence upon the issue of profits, and overrule that objection without further comment.

The challenges, however, for want of proof in support of the issue of profits attributable to the infringement, present the serious and crucial questions involved in this appeal. Primarily, these questions are: (1) Whether the evidence proves the actual net profits realized by the defendant for its products within the infringement; and (2) whether it authorizes the award for the entire amount thereof.

(1) On the first-mentioned inquiry no difficulty appears in the way of an answer in the affirmative, as the evidence is both direct and convincing. While the defendant was engaged in two classes of work, one infringing and the other noninfringing, the production and profits arising from each are fairly settled by the testimony, and the results of the noninfringing business are deducted in the computations of net profits due to the infringing operations; and the contention of insufficiency of proof on this branch of the inquiry is therefore overruled.

(2) The main question of liability for the entire net profits under the evidence reported by the master, if otherwise difficult of solution within the various lines of patent cases cited in the briefs respectively, we believe to be settled by the recent decision of the Supreme Court in Westinghouse Co. v. Wagner Mfg. Co., 225 U. S. 604, 32 Sup. Ct. 691, 56 L. Ed. 1222, 41 L. R. A. (N. S.) 653, published subsequent to the hearing before the master and the filing of his report. That the citations from the various circuits disclose want of harmony in reference to the rule applicable for recovery of "profits to be accounted for by the defendant," as provided by statute (R. S. § 4921 [Comp. St. 1913, § 9467]), plainly appears; and it may not be gainsaid that the extended line of cases in the Supreme Court prior to this Westinghouse Case had failed to clarify the rule of proof to be applied for charging profits against the present infringer for its unlawful appropriation of the patent device, as settled by the earlier decree. On the hearing of appellees' exceptions to the master's report, however, the Westinghouse Case was before the trial judge, and his ruling for recovery of all the profits (as stated in the opinion) conformed to his interpretation thereof as decisive of the issue. That case was brought to the Supreme Court on certiorari to the Circuit Court of Appeals for the Eighth Circuit, and it is stated at the outset of the opinion that "the writ of certiorari herein was not granted for the purpose of re-examining the court's ruling that defendant's type M transformer was not an infringement of the patent" in suit, while other transformers made and sold by it were infringements, but "was issued in view of the holding," notwithstanding the finding of a profit made by defendant of $132,000 "from the sale of infringing transformers," that only $1 was recoverable, because the plaintiff "failed to separate the profits made by its patent from those made by the defendant's addition." Its rulings, therefore, on the distinct question of the burden of proof, which (as there stated) "constantly arises in patent cases," are plainly controlling in so far as they are applicable.

In Westinghouse Co. v. Wagner Mfg. Co., supra, the Westinghouse

patent device was an "electrical converter" or transformer, a combination of means in an appliance for transforming currents of electricity, and the defendant, Wagner Manufacturing Company, made and sold transformers extensively which were adjudged to be infringements of the patent in a prior suit against a user, conceded to be res adjudicata as to the Wagner Company. But these infringing transformers contained additional means, which were held below in the instant suit "noninfringing and valuable improvements which contributed to the profits" in controversy. After the prior adjudication of infringement the Wagner Company devised the above mentioned "Type M" transformers and proceeded to make and sell them. The instant suit was then brought against the Wagner Company to enjoin alleged infringement therein and for recovery of damages and profits for the entire course of infringement, resulting in the rulings and decree reviewed by the Supreme Court on certiorari. It is our understanding of the opinion thereupon, delivered by Mr. Justice Lamar, that it clearly decides in substance these propositions:

That the case is not within either of the classes of patent infringement (classified as "a" and "b" in the opinion) wherein the infringer is chargeable per se for all the profits received, but is of the character (classified as "c" and "d") where the invention is used with other means, so that "each may have jointly, but unequally, contributed to the profits"; that, thus established, the profits are to be apportioned accordingly whenever the shares of each are ascertainable and proven, and in such event recovery is limited to the share attributable to the invention; that the wrongful appropriation of the invention by the infringer creates "the liability of a trustee ex maleficio who has confused his own gains with those which belonged to" the owner of the patent; that such liability arises alike whether "the patent device is shown to have preponderated in the creation of profits" or otherwise; that the plaintiff having proved the existence of profits, together with the fact "that the defendant had inextricably commingled and confused the parts composing it," had completely met the requirements of burden of proof to establish prima facie right "to a decree for all the profits"; and that the burden of apportionment, if the profits were apportionable, was then cast upon the defendant.

The opinion refers to the conflicting authorities upon the burden of proof in patent causes as disagreeing "not so much as to the rule as to its application" to infringers of patents. It comments on Garretson v. Clark, 111 U. S. 120, 4 Sup. Ct. 291, 28 L. Ed. 371, and other decisions cited contra, and leaves no room for doubt that they were carefully considered and must be regarded as overruled in so far as they appear to be inconsistent with the foregoing propositions; and it furthermore refers to and quotes approvingly from Brennan & Co. v. Dowagiac Mfg. Co., 162 Fed. 472, 476, 89 C. C. A. 392—a leading case in point from the Circuit Court of Appeals of the Sixth Circuit—for exemplification of the doctrine upheld. As clearly stated in the opinion, it remains open to the defendant "to disprove the plaintiff's case, or to offer evidence in mitigation, or both," so that the defendant is in no sense foreclosed from the benefit of any evidence

which may tend to measure and prove the share of profits attributable to other means in addition to those of the patent.

On the assumption, therefore, that the rulings thus summarized are radical departures from earlier decisions of the Supreme Court in reference to the burden of proof on the accounting in patent cases, or (as described in the appellant's brief) are "subversive of what have heretofore been uniformly regarded as settled rules of evidence in accountings," we are impressed with no doubt that final decision was thereby intended of that unsettled question. Its premise of the infringer's liability as a trustee ex maleficio seems to us impregnable, so that no escape appears from the established rule thereupon in reference to confusion of profits.

We are of opinion that these rulings in the Westinghouse Case are equally applicable to the case at bar for upholding recovery of the entire profits in evidence. It is res adjudicata therein that the patent grant is for the device "as a single tool," and that both device and process were appropriated and used by the defendant as such entireties in producing these profits. The evidence, both direct and circumstantial (inclusive of the defendant's conduct and arrangements during the period of infringement), impresses us to be convincing, if not conclusive, of the valuable character of the invention and that much of the profits realized was attributable to its use. Considerable testimony appears on the part of the defendant directed to denial or belittlement of its value as compared with the other known means and processes open to use by the defendant (involved and considered in the prior adjudication of infringement), but we believe it to be both insufficient to that end (for reasons to be mentioned) and ineffectual for escape from the above rule in the most favorable view of its bearing. These prior processes—the "Shuman or single-pour" process and the "European three-step" process—were not only determined in the suit to be inadequate at the date of the Schmertz invention for commercial production of the modern sizes of wire- glass, but the present testimony introduced by the defendant fails to overcome the evidence in this record, that neither of such processes, as devised, was capable of such production on an equality with the Schmertz means and process.

[2] In reference to a circular publication introduced in evidence, purporting to be issued in Germany, by the Siemens Glass Works, stating amounts and sizes of wire glass produced by them under patents and processes named from 1893 to 1900—which is strongly urged on behalf of the defendant as proof of adequacy of the "European process" for profitable manufacture of large sizes of glass mentioned, and appears from the master's report to have been so accepted and treated—it is elementary in the law of evidence that such circular is incompetent to prove, as substantive evidence affecting a stranger to it, any fact recited therein. The statutory rule of patent law charging the applicant for a patent with notice of prior publications, whereby their introduction becomes admissible for that purpose, is plainly not applicable (as appears to be the contention) to give probative force to this publication under the present issue. Another cir-

cumstance in evidence is urged as proving the patent device to be without substantial value—and likewise for fixing a "standard of comparison" hereafter referred to—which appears to be so accepted and mentioned in the master's report, namely, that the defendant speedily obtained or devised a noninfringing substitute for the means and process of the patent when the decree of infringement was handed down, and immediately entered into use thereof, and that the substituted means proved (as alleged) equally beneficial with the patent device. This substitute unmistakably appears to be a new improvement, not a device of the prior art, and was subsequently thus adjudicated as an improvement of the above-mentioned "European process," so that the circumstance relied upon is without force, as we believe, for support of the contention.

[3] Under the foregoing doctrine, it becomes immaterial whether the defendant used other beneficial means or methods during the infringement, in addition to its appropriation and use as an entirety of the patent device, for these reasons: (a) That no proof was furnished tending to establish the contributory share of such additions in the profits, if they did contribute thereto; and (b) that the testimony introduced does not tend to prove, either substantial contributions thereby or that any share of the additional means in the profits can be definitely ascertained for apportionment.

The contentions of distinction from the Westinghouse Case and inapplicability of its doctrine to the present issues, upon which reversal is sought, we understand from the extended argument to be embraced in these propositions: First, that the product of the infringement in suit was wire glass, an old product, and in such case recovery is limited to the saving or economy effected by the patent device in its production, so that recovery of the entire profits realized from sale of the products, allowable in the case of a new product ("in effect dominated and controlled by the patent"), is unauthorized; second, that the evidence shows a noninfringing method of producing wire glass, and the authorities concur in imposing the "standard of comparison" rule thereupon and require the complainant to prove the saving obtained by the patent means as the measure of recovery. Both of these contentions are untenable, as we believe, under the above-mentioned facts in evidence. While it is true that wire glass was produced long prior to the patent in suit, we do not understand this fact to bar or affect the measure of recovery awarded by the decree. As above recited, not only is it established by the prior adjudication that production of the sizes of wire glass obtained by the patent means and process was not commercially attainable under the pre-existing means relied upon, but further evidence appears in the present record in support of that proposition, if otherwise open to controversy. We do not understand, therefore, that the case presents ground for operation of the so-called "standard of comparison rule," whatever be the view entertained of applicability of that rule under the doctrine of the Westinghouse decision, when confusion of profits in the infringement is established. Accordingly both of these contentions must

be overruled, and as well the various assignments of error on which reversal is sought.

[4] The record, however, exhibits an erroneous allowance in the award which requires correction, although not mentioned in the assignments of error. As recited in the opinion below, the aggregate of "profits chargeable to the defendant" was $49,003.09, and interest was computed thereon "from July 1, 1909, to April 1, 1913," amounting to $9,188.08 as an additional allowance in favor of the complainant, making the "gross amount for profits chargeable" thereupon $58,191.17. In Tilghman v. Proctor, 125 U. S. 136, 160, 8 Sup. Ct. 894, 31 L. Ed. 664 (and subsequent cases), the rule is settled that such allowance of interest is unauthorized, for the reason that the profits "as a measure of unliquidated damages" do not bear interest "until after their amount has been judicially ascertained." The allowance thus presented by the above-mentioned ruling cannot rightly be affirmed, and the want of an assignment of error thereupon must be disregarded. It is contended on behalf of the complainant that another item of substantially equal amount was erroneously excluded from allowance in its favor and should be charged as a profit to offset the above-mentioned error. But we believe the record to be insufficient for support of such contention, so that it must be overruled; and modification of the decree is directed accordingly, to exclude the interest allowance of $9,188.08.

[5] II. The complainant's cross-appeal for correction of the decree raises this twofold question: Was error committed in the allowance in favor of the defendant of interest on its capital invested in the business during the period of infringement, either for the whole or any part of such capital? This allowance, computed at $11,047.33, was deducted from the charge for profits (and interest thereon as above mentioned), and thus constitutes a credit to the infringer for use of its entire plant during the unlawful operations.

In support of the assignment of error for such allowance the citations are Rubber Co. v. Goodyear, 9 Wall. 788, 804, 19 L. Ed. 566, and Seabury v. Am Ende, 152 U. S. 561, 569, 14 Sup. Ct. 683, 38 L. Ed. 553; while an intermediate case (not cited in the briefs), Manufacturing Co. v. Cowing, 105 U. S. 253, 257, 26 L. Ed. 987, clearly tends to uphold an allowance for such use of plant. The Rubber Company Case appears to be in conflict with both of the later cases referred to, but each of these decisions involved like question for review, and we believe the present issue must be settled in accord with our understanding of their effect, and not in the exercise of any view thereof which may otherwise have been entertained as a case of first impressions.

The earlier case of Rubber Co. v. Goodyear, 9 Wall. 788, 19 L. Ed. 566, reviews and affirms the disallowance below of a claim presented by the infringer for "interest on capital stock," as a deduction from its profits to be accounted for in the suit for infringement. In the opinion no reference appears to any distinction between "capital stock" and "capital invested" in the business, but the rulings are instructive for the doctrine stated, in substance that "the profits made in violation

of the rights of the complainant" are "to be ascertained by finding the difference between cost and yield," with the elements of cost entering therein (as specified) to be calculated "as a manufacturer calculates the profits of his business"; that the profit for which the infringer is accountable "is the gain made upon a business and investment when both receipts and payments are taken into the account"; and that it is the policy of the law that "the wrongdoer shall not profit by his wrong."

In the two succeeding cases above cited, however, it is our understanding of their import that a different rule is pronounced for ascertaining the profits recoverable against an infringer. The opinion in Manufacturing Co. v. Cowing, 105 U. S. 253, 26 L. Ed. 987, directs reversal of the findings of profit chargeable to an infringer (among other grounds) for failure to make an allowance for "use of tools, machinery, power, and other facilities employed in the manufacture." In Seabury v. Am Ende, 152 U. S. 561, 14 Sup. Ct. 683, 38 L. Ed. 553, both of the above cases are referred to, without either approval or disapproval in direct terms, although the opinion plainly negatives adoption of the ruling in the Rubber Co. Case, when approval thereof would have settled the issue. The court below had disallowed the infringer's claim of deduction from profits for "interest on plant and capital invested," and the opinion expressly predicates affirmance on the fact that the plant and capital were largely engaged in noninfringing business, so that the infringing portion was merely incidental to the other operations, and holds that without evidence to "enable the master to satisfactorily apportion the interest between the several kinds of business" no allowance therefor was authorized. As stated in the opinion, the case is thus distinguished from Manufacturing Co. v. Cowing, where the plant was exclusively employed in the infringing business. Furthermore, the opinion carefully states that it is not to be understood "as holding that in no case where the plaintiff's damages are measured by the defendant's profits ought there to be an allowance in the latter's favor of interest on the money invested in the plant," nor "even when the use of the plant is not wholly restricted to making the infringing article."

We believe the direct decision in Manufacturing Co. v. Cowing, supplemented by the Seabury Case, with its clearly defined rulings in accord therewith, must be regarded as settlement of the rule to be applied here, namely, that the infringer is entitled to deduction from the profits for use of its capital (including plant) invested in the business, to the extent of its actual employment in the infringing operations, and that for such allowance interest may be computed on the value thereof and apportioned for the share of infringing business, whenever noninfringing business is carried on therewith and the share of each is ascertainable. In this view error is well assigned for correction of the decree, for the reason that interest is computed and deducted upon the entire capital invested, while a portion of the business carried on was noninfringing. For the reasons, however, that the proportions of infringing and noninfringing business clearly appear from the evidence—the latter earning practically one-fourth

of the profits—we believe the apportionment for an interest allowance within the rule above stated can equitably be made for correction of the decree.

The District Court, therefore, is directed to amend the amount awarded by the decree for gains and profits by excluding the allowance of interest thereon, and by making the allowance for interest on capital invested in the business in conformity with the foregoing ruling. Upon correction accordingly, the decree stands affirmed, without recovery of costs by either party.