BRADFORD et al. v. EXPANDED METAL CO. et al.

(Circuit Court of Appeals, Third Circuit. September 10, 1906.)

No. 4.

PATENTS—INVENTION—PROCESS OF EXPANDING SHEET METAL.

> The Golding patent No. 527,242, for a process of making open or reticulated sheet metal by slitting and stretching the sheet at the same time, is void for lack of patentable invention in that it describes merely an abstract idea without sufficiently disclosing means by which it may be put into practice.

Appeal from Circuit Court of the United States for the Eastern District of Pennsylvania.

For opinion below see 136 Fed. 870.

George H. Christy and E. Hayward Fairbanks, for appellants.

Ernest Howard Hunter, for appellees.

Before DALLAS and GRAY, Circuit Judges, and McPHERSON, District Judge.

DALLAS, Circuit Judge. The Expanded Metal Company and Chess Bros., the company's exclusive licensees in the state of Pennsylvania, were the complainants below, and charged the appellants with infringing letters patent No. 527,242, issued in October, 1894, for an invention made by John F. Golding and assigned to the Metal Company before the letters were actually issued. The subject of the invention, as declared in the specification, is "a new and useful improvement in the art of expanding sheet metal"; and the precise improvement which the applicant asserted that he had made was the simultaneous cutting and opening, or expanding, the metal at the cuts by stretching the severed portions. In other words, he applied for a patent upon a method of manufacture, and as will appear from the specification, which we are about to quote, he distinctly limited the novelty of his method to the stretching of the severed portion at the time when the metal was cut and the slits were opened. The specification refers to the prior art, and to the applicant's proposed improvement, in the following language:

"In the manufacture of what is now generally known as 'expanded sheet metal,' it has been customary to first cut the slits in the sheet metal at short distances apart, and to open the metal at the cuts thus formed by bending the severed portions or strands in a direction at right angles substantially to the plane of the sheet. It has also been made by simultaneously cutting and opening the metal by means of cutters set off, or stepped, relatively so as to make the slashes or cuts in different lines in the manner set forth in patents No. 381,230 or No. 381,231, of April 17, 1888. In both of these methods the product is somewhat shorter and materially wider than the original sheet, but practically no stretching or elongation of the metal forming the strands is caused.

"In my present invention I seek to avail myself of the ability of the metal to stretch or distend as well as of its ability to bend under strain or pressure, and the invention consists in the improved method of making expanded metal, viz., by simultaneously cutting and opening or expanding the metal at the cuts by stretching the severed portions.

"In the practice of the invention I prefer to make a series of slits in a straight line across the edge of the sheet, and at the time of cutting the slits, and as a continuation of that operation, to depress or stretch the severed metal, i. e., those portions of the sheet lying outside of the cuts, in a direction at right angles to the sheet, without any contraction for the length of the original sheet. This operation is then repeated after the sheet has been fed forward, the slits being made opposite the portions unsevered at the previous operation, and so on until the entire sheet is expanded.

"My invention allows the use of a single straight under knife, which of course does not need to be shifted in changing the location of the cuts, and the upper cutters are also arranged in a straight line, but their acting edges represent a corrugated form of alternate transverse projections and recesses adapted to coact with the under knife in cutting the slits at the proper intervals and to stretch the severed strands, and either the upper cutter or the sheet is shifted back and forth between the operations as will be understood.

"In the accompanying drawings Fig. 1 is a perspective of a sheet, a part of which has been expanded by my invention. Fig. 2 is an elevation of the preferred form of cutters used in manufacturing it. Fig. 3 is a section on

line 3–3 of Fig. 2. Fig. 4 is a plan of the sheet showing the first line of slits in dotted lines.

"In the drawings A represents the sheet from which the expanded metal is formed. B represents the series of upper or moving cutters and C is the lower knife which may be and preferably is, stationary. The lower edges of the cutters B are so shaped as to form alternate transverse projections, b, and recesses or intervening openings, c; the projecting portions being adapted to coact with the lower knife in forming the slits. They are also adapted to force or carry downward the severed portions of the metal at the same operation to the position indicated by the broken lines, m, at Fig. 2. It will be noticed that at the time the bend is imparted to the severed portion, there can be no contraction in the product from the length of the sheet A., because the ends of the severed portion or strand are still integral with the sheet and will not permit it. The sheet is then fed forward and the slitting and stretching operation is repeated. One line of slits across the sheet is formed at each operation, and the upper cutters, or the sheet, may be shifted and the sheet be fed forward between the operations so that the slits are in every case made, back of the portions left unsevered at the preceding operation, or, in other words, the slits and unsevered portions alternate in position at successive operations. The bend given to the severed portion or strands as they are usually called, is in a direction at right angles to the plane of the sheet, and as there is no contraction in the length of the metal, it necessarily follows that the expansion is obtained from the stretch, distention or elongation of the severed strands."

In conformity with the specification, the applicant claimed:

"The herein described method of making open or reticulated metal work, which consists·in simultaneously slitting and bending portions of a plate or sheet of metal in such manner as to stretch or elongate the bars connecting the slit portions and body of the sheet or plate, and then similarly slitting and bending in places alternate to the first mentioned portions, thus producing the finished expanded sheet metal of the same length as that of the original sheet or plate, substantially as described."

The Circuit Court sustained the validity of the patent and the charge of infringement, and made the usual decree for a perpetual injunction and an account. From this decree the present appeal is taken, and several questions are presented and·have been ably argued by counsel, both orally and upon the printed briefs. Of these, however, we think it unnecessary to consider·more than one, namely, the validity of the patent in suit. It must be conceded that the case is close, and that reasons for the decision of the Circuit Court are not lacking; but we have been obliged to come to the conclusion that the so-called invention was not really an invention at all within the meaning of the patent laws. As we regard the application, it was no more than the announcement by Golding of a happy thought, unaccompanied by any sufficient description of the means by which his thought might be realized. Indeed, it does not seem unfair to add, that the applicant himself was in such doubt about the validity of the patent in suit by which he sought to protect the method of manufacture therein described, that he hastened to take out a patent for a machine by which the desired result could be accomplished, and obtained by letters No. 581,713, all the advantage over his competitors to which we think he is·entitled.

When the patent in suit was applied for, it was certainly well known that a strip of a thin metal blank, partially severed by a slot from the portion adjacent thereto, could be stretched; but, in

spite of this fact, the patent undertakes to obtain a monopoly of such stretching, whenever this result is accomplished by a particular method, namely, by acting upon the bars that connect the slit portions and the body of the sheet or plate, so as to stretch them at the time when the slit is made and the slit portion is bent. Whatever the manner by which this simulataneous action is brought about, the claim is broad enough to cover it, and the consequence is, as it seems to us, that the applicant is asking for a patent upon what may have been a valuable idea, but was after all no more than this. His specification and claim may be condensed into a brief announcement to the world, that it would be an improvement in the process of manufacturing expanded metal, to stretch certain portions of the metal at the time when the slit was cut and the mesh was opened. He did not explain how this was to be done, save in a rudimentary and insufficient way, until he made his application for a machine to put his idea into practice; and we repeat, therefore, that in our opinion his patent for a so-called method is obnoxious to the well-known rule which is thus summarized in section 509 of Robinson on Patents:

"Patents are not granted for abstract ideas, principles, modes of operation, functions or results of machines, but underlying every patentable invention is the idea of means. The thing patented is the concrete expression of this idea, the mechanism by which it is reduced to practice. Burr v. Duryee, 1 Wall. 532, 17 L. Ed. 650, 660, 661; O'Reilly v. Morse, 15 How. 62, 14 L. Ed. 601. It is this which must be set forth in the claim in distinction from the discovery, or conception, idea or mode of operation which it embodies."

Without extending this opinion, we think the principles laid down by the Supreme Court in Risdon Iron Works v. Medart, 158 U. S. 68, 15 Sup. Ct. 745, 39 L. Ed. 899, and the other cases, both in that court and in the lower courts, which have recognized these principles as valid—many of them are cited on the appellant's brief—require the reversal of the decree appealed from, with instructions to the Circuit Court to dismiss the bill at the costs of the complainant.

It is therefore so ordered, with further instructions to the clerk of this court that the costs of the appeal are to be paid by the appellees.