EXPANDED METAL CO. v. GENERAL FIREPROOFING CO.

(Circuit Court of Appeals, Sixth Circuit. October 16, 1908.)

No. 1,783.

PATENTS (§ 328*) — PROCESS — DESCRIPTION OF MEANS — PROCESS OF EXPANDING SHEET METAL.

The Golding patent No. 527,242, for a method of making expanded sheet metal by slitting and stretching the sheet at the same time, is not invalid for insufficiency of description of the means by which the process may be

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

practiced, nor because for the function only of a machine, but covers a new, useful, and patentable improvement in the art of expanding sheet metal, and is valid. Also *held* infringed.

[Ed. Note.—For other cases, see Patents, Dec. Dig. § 328.*]

Appeal from the Circuit Court of the United States for the Northern District of Ohio.

For opinion below, see 157 Fed. 564.

Ernest H. Hunter, for appellant.

G. H. Christy and Thomas W. Bakewell (E. H. Fairbanks, of counsel), for appellee.

Before LURTON, SEVERENS, and RICHARDS, Circuit Judges.

SEVERENS, Circuit Judge. This is a suit brought by the owner of letters patent No. 527,242, granted October 9, 1894, to John F. Golding, for a "Method of Making Expanded Sheet Metal," complaining of the infringement thereof by the defendant. In the court below the patent was held to be invalid upon the grounds stated by the Circuit Court of Appeals for the Third Circuit in its opinion in the case of Bradford v. Expanded Metal Company, the complainant here, reported in 146 Fed. 984, 77 C. C. A. 230.

On this appeal much reliance is placed by the appellee upon the decision in that case, and rightly so, for this court would be strongly inclined to follow a decision of that learned court, if made of the same questions and upon the same record as presented in the case before us. The question of the validity of the patent is the same; but we have no means of knowing what evidence was adduced in the case in the Third Circuit, and so are unable to determine to what extent, if at all, our duty to follow that court should constrain us. At all events, our impressions upon the questions involved are so strong that we feel compelled to express an independent judgment.

The art of expanding sheet metal had made considerable progress at the date of Golding's invention; and the product had been used for various purposes, such as latticework, trellises, screens, fencing, lath, and the re-enforcement of concrete structures. In general, it may be said it consisted of slitting sheet metal into narrow strands by making more or less short, parallel slits of equal length along the length of the sheet alternately; that is, in such way as that each alternate line of slits should equally overlap the ends of the adjacent slits in the first line of slits, and so on until the sheet was slitted. The sheet was then stretched laterally, the result being that the slitted strands and the uncut portions between them formed diamond-shaped meshes of nearly equal size and shape, but not of the desired uniformity, owing, doubtless, in large measure, to the variations in the thickness and texture of the sheet of metal. The sheet was shortened somewhat, but made much wider. This method had been improved upon, and notably by an invention of Golding and Durkee, patented by letters No. 320,242, dated June 16, 1885. We shall not stop to enter into a further description of other earlier methods, which were the subjects of patents in this and other countries, for the reason that it sufficiently appears that the Golding and Durkee invention just mentioned was the most advanced and

had proved the most successful at the date of the invention which is the subject of the patent in suit. It seems desirable to describe the Golding and Durkee invention, patented in 1885, as we think it is the proper datum from which to reckon the novelty and utility of the subsequent invention of the Golding patent involved in the present suit. It consisted in—

"beginning at one side and corner and making an incision within the side of the metal, thus forming a strand which is simultaneously pressed away from the plane of the metal in a direction at or near a right angle, the position the strand assumes depending upon the distance it is moved from the plane of the metal. a' in the drawing shows the first cut made. The next step in this process is to make additional incisions, as is shown at b¹, b², and b³ in the figure here attached, further within the plate of metal, and leaving uncut sections at the ends of the cuts, and, simultaneously with the cutting, the strands are pressed away from the plane of the metal at the angle and to the desired position, as above described. Thus each row of meshes is simultaneously cut and formed from a blank piece of metal without buckling or crimping the blank. In the act of cutting and forming the meshes, the finished article is contracted in a line with the cuts or incisions, and consequently it is shorter in this direction than the piece from which it was cut, but is greatly lengthened in a line at an angle to the plane of the original sheet plate or blank."

It is material to the purpose to observe (what will presently be seen) that by this method the strands are not strained by lengthening them, or, if so, not beyond what is incident to the slitting and crowding them out. On the contrary, the strands, when cut and crowded out, pull all their attachments near and far (or so far as the already cut parts of the blank extend), and is the cause of the shortening of the sheet; and, as the slitting and forming of the several meshes is going on at the same time, it is obvious that, with all the severed parts exposed to the strain of the operation, irregularities in the result from buckling and crinkling in the severed parts would probably occur. And the testimony shows that this was the result manifested by the process in operation. The sheet of metal was somewhat contorted and materially shortened.

The object of Golding's present invention was to so order the process of slitting and bending the strands to their place as to prevent the distortion of the sheet and preserve its length and the regularity of its

outline and of its meshes.   To do this, he proposed to avail himself, as he says, of the capacity of the metal to lengthen and be bent under strain without materially impairing its strength.   The method he proposes is this:   He begins near one corner of the sheet and cuts a straight line of slits of equal length and distance apart near the edge of the sheet and along its length, and, simultaneously with the cutting of each slit, bending off and down the several strands into the form of one-half of a diamond-shaped mesh.   He then repeats the same operation by slitting a line of slits parallel to the first, except that the middle of the length of each of his slits will be made opposite the space left uncut in the first operation, and, simultaneously with this second slitting, each severed strand is turned off and down to form the other half of the diamond-shaped mesh.   By a continuation of this process the whole sheet is expanded without shortening and in regularly shaped meshes.   The advantages of this process are obvious.   They result from the   circumstance that every time a slit is made and the strand bent to the required form the ends of the strand are supported and held in place by the whole of the uncut sheet.   The cutting off and bending down of each strand is entirely independent of any other operation, and the maintenance of the length of the sheet is preserved by keeping the body of it entire while the strands are each being cut off and bent. It appears from the testimony of experts that the expansion of metal by stretching it does not, within moderate limits, weaken its tensile strength, though it has a tendency to make it more brittle, but not injuriously, if not carried too far.   The utility of this method of expanding the metal is sufficiently proven.

Figure 1 of the drawings, reduced in size, illustrates the sheet partly expanded by the process or method above explained.

The claim reads as follows:

"I claim the herein described method of making open or reticulated metal work, which consists in simultaneously slitting and bending portions of a plate or sheet of metal in such manner as to stretch or elongate the bars connecting the slit portions and body of the sheet or plate, and then similarly slitting and bending in places alternate to the first mentioned portions, thus producing the finished expanded sheet metal of the same length as that of the original sheet or plate, substantially as described."

It seems even more simple than any method theretofore employed. It drew from the Circuit Court of Appeals for the Third Circuit the characterization of a "happy thought," and we think merited it.   But that court felt constrained to reverse the decree of the lower court.

which sustained the patent, because the conception of the thought was unaccompanied by any sufficient description of the means by which it might be realized. We cannot agree to this, especially in the face of the testimony on that subject in the present record.

If the specifications for a process patent do not sufficiently indicate to those skilled in the art to which it relates some means or instrumentalities by which it may be practiced, and the contrivance or means for effecting it is beyond the skill of a trained mechanic, it might well be said that the inventor had not shown how to make his invention useful, and therefore had not entitled himself to a patent. It would seem probable that in view of the prior art a skilled artisan would be able himself to adjust the machinery already in use to execute the instructions contained in the specifications. But here the inventor has gone on to point out that the slitting and bending is to be done by a stationary cutter under the sheet, and upper cutters to co-operate in shearing the slit. These upper cutters are so constructed as to bend down the strand to the proper distance. It is not stated just what the form shall be, but only ordinary skill in mechanics would suggest that the outer side of the cutter might be beveled or a shoulder might be formed thereon to carry down the strand when severed. Mechanism for the shifting of the sheet and of the knives was already in use in machines for expanding metal, and, indeed, was common in the mechanical arts. Moreover, experts have here testified that these devices could be arranged by any skillful mechanic, and we have no reason to doubt it.

Nor can we agree to the suggestion that the patent was for the function only of a machine. No doubt the function or principle of a machine cannot be the subject of a patent. It is not a distinct entity, but a mere property of the machine, and inseparable from it, and is developed by its normal use. But Golding was not here seeking to patent a machine, or the operation of a machine. It was a matter of indifference to him by what particular means his method could be practiced, but only that certain things should be done in a certain order. The apparatus he suggests would not by any known method of use be of any value. True, he could slit and bend sheets and strands of metal with it. That was the function of it. But still, until and unless he invented a specific method of use, his apparatus was of no account. The material and the apparatus were mere disjecta membra until the light of more than the ordinary intelligence pointed the way to the subjection of the one to the operation of the other to a useful purpose. We think the invention may rightly and aptly be characterized as an improvement in the art of expanding sheet metal, and is within the letter and spirit of the statute. To hold otherwise would be to adopt a rule which would operate to exclude from the benefits of the law many valuable inventions of things new and useful, and this, not by resting upon any exception found in the statute, but upon an artificial graft of error alien to its spirit and purpose. Several of the decisions of the Supreme Court are cited by Mr. Justice Brown in Risdon Locomotive Works v. Medart, 158 U. S. 68, 15 Sup. Ct. 745, 39 L. Ed. 899, which illustrate the difference between the function, principle, or operation of a machine and the application of the function or principle

in a peculiar and as yet unthought-of way and the discovery of the new mode of application of the principle conduces to a new and useful result. The cases of Mowry v. Whitney, 14 Wall. 620, 20 L. Ed. 860, Cochrane v. Deener, 94 U. S. 780, 24 L. Ed. 139, and the Telephone Cases, 126 U. S. 1, 8 Sup. Ct. 778, 31 L. Ed. 863, are examples in point. And see Carnegie Steel Co. v. Cambria Iron Co., 185 U. S. 403, 424–425, 22 Sup. Ct. 698, 46 L. Ed. 968, and 30 Cyc. 825. As we understand the case of Risdon Locomotive Works v. Medart, nothing is there decided which is in conflict with these views. Three patents were there under consideration. The first one considered was for a process in making belt pulleys. The other two were for belt pulleys. The last two were disposed of upon the ground that the pulleys were not essentially different from former constructions, but were better only in the respect that they were the product of superior workmanship; and that part of the case may, for present purposes, be laid aside. With regard to the patent for a process, the court took the view that the invention was only of the result of the mechanism therein described. The opinion of the court was thereupon summed up as follows:

"The result is a pulley more perfectly balanced, more faultless in shape, stronger and more durable, perhaps, than any other before produced; but this was not because the patentee had discovered anything new in the result produced, but because the mechanism was better adapted to produce that result than anything that had been before known. As pulleys of that description had been produced before, doubtless with greater care in the manufacture of them, a pulley as perfect as his might have been made. The operation or function of such machine, however, is not patentable as a process."

The vital differences between such an invention and this are that in this a new and different result is produced, a difference so great as to supplant all previous results; the mechanism by which it is produced is not new—that is, not patentably new; but the manner of its use is new, and the result is not produced simply by superior workmanship. That degree of workmanship which existed in the art had not been equal during the many years of the previous manufacture of expanded metal to the discovery of the method of producing it which Golding devised.

We are of opinion, therefore, that the patent should be sustained. The infringement of it is scarcely denied, and we have no doubt on that subject. The decree will be reversed, with costs, with directions to enter a decree for the complainant for an injunction, and for the profits and damages to be ascertained.