EXPANDED METAL CO. et al. v. GENERAL FIREPROOFING CO.

(District Court, N. D. Ohio, E. D.   December 15, 1917.)

No. 6.

1. PATENTS ⟳318(2)—ACCOUNTING FOR INFRINGEMENT—RIGHT TO BOTH PROFITS AND DAMAGES.

Where, on an accounting for damages and profits in an infringement suit, the profits made by defendant are in excess of complainant's damages, complainant is not entitled to recover damages in addition to profits.

2. PATENTS ⟳319(3)—SUITS FOR INFRINGEMENT—RIGHT TO INCREASE OF DAMAGES.

Where defendant, before making use of the process subsequently held to be an infringement, obtained the opinion of counsel of standing that it did not infringe, and during the entire time of the infringement there were decisions of federal courts of high authority holding the patent invalid, the question being finally settled in favor of its validity by the Supreme Court, the damages should not be trebled by the court, nor any sum added as punishment, or for complainant's expense of litigation.

3. PATENTS ⟳319(1)—DAMAGES FOR INFRINGEMENT—ESTABLISHED ROYALTY.

A master's finding of an established license fee for the use of a patented process, making it the measure of damages for infringement, held not erroneous, because the licenses granted also included the right to use other patented processes, and were exclusive within a limited territory, where the processes licensed were not capable of conjoint use, but the licensees had the option to use either, and the same royalty was paid after the other patents expired, including during the time of infringement.

4. PATENTS ⟳318(6)—INFRINGEMENT—PROFITS RECOVERABLE.

An infringer is liable for only such profits as were actually made by the infringement, and is entitled to a deduction of expenses and losses incurred in good faith in marketing its product, although by better business methods its might have realized larger profits.

5. PATENTS ⟳318(6)—INFRINGEMENT—ACCOUNTING FOR PROFITS.

An infringer, on an accounting for profits, is not entitled to a deduction of interest on the capital invested.

6. PATENTS ⟳318(4)—INFRINGEMENT—ACCOUNTING FOR PROFITS.

An infringer of a patent for a process is liable for all the profits made on the product of such process, in the absence of proof that other processes, adequate to produce the same product, were open to its use and of the cost of production by their use.

7. PATENTS ⟳318(4)—INFRINGEMENT—ACCOUNTING FOR PROFITS.

To entitle an infringer of a process patent to reduce its liability for profits because of other processes which were open to its use, such processes must have been in existence and open to public use when the infringement commenced: it cannot avail itself of a process developed afterward by itself, or others, and used only experimentally or occasionally during the time of infringement, for the purpose of avoiding or minimizing its liability.

8. PATENTS ⟳322—ACCOUNTING FOR INFRINGEMENT—HEARING BEFORE MASTER.

Where an accounting before a master for infringement continued for five years, and complainant had full access to defendant's books and caused them to be examined by an expert, it was not an abuse of discretion for the master, at the time of final argument on his report, two years later, to refuse to reopen the proofs to permit complainant to re-examine the books and introduce further evidence.

9. PATENTS ⬤⟹322—INFRINGEMENT—ACCOUNTING FOR PROFITS.

   Where, on an accounting for profits by an infringer, it was given credit for losses incurred in the sale of its product, some of which, it appears, were recovered after the master's report, complainant is entitled to a further accounting with respect thereto.

In Equity. Suit by the Expanded Metal Company and the Consolidated Expanded Metal Companies against the General Fireproofing Company. On exceptions to master's report. Confirmed.

Price, Alburn, Crum & Alburn and Fay, Oberlin & Fay, all of Cleveland, Ohio, for plaintiffs.

Charles Neave, of New York City, and Hoyt, Dustin, Kelley, McKeehan & Andrews, of Cleveland, Ohio, for defendant.

WESTENHAVER, District Judge. This cause is now before me on exceptions to a report of Special Master W. H. Marlatt, Esq., filed herein October 30, 1915, finding the damages sustained by complainant and the profits made by the defendant by reason of wrongful infringement by defendant of United States letters patent No. 527,242, issued October 9, 1894, to John F. Golding, and later assigned to · complainant. Both parties have excepted, and, before proceeding to a statement or consideration of their exceptions, a brief preliminary statement of the case needs to be made.

This suit was begun in this court in February, 1905. Upon final hearing Judge Tayler held the patent invalid and dismissed the bill. (C. C.) 157 Fed. 564, August 6, 1907. Upon appeal the Circuit Court of Appeals of this circuit reversed this decision, holding the patent valid and infringed. 164 Fed. 849, 90 C. C. A. 611, October 16, 1908. Prior to these decisions, the Circuit Court of Appeals of the Third Circuit had held this patent to be invalid. 146 Fed. 984, 77 C. C. A. 230, September 10, 1906. In consequence of this conflict in the decisions of two different Circuit Courts of Appeal, the United States Supreme Court took jurisdiction of both cases by certiorari, and on final hearing reversed the judgment of the Third Circuit Court of Appeals and affirmed the judgment of this circuit, thus finally determining that said letters patent were valid and infringed by the defendant. 214 U. S. 366, 29 Sup. Ct. 652, 53 L. Ed. 1034, June 1, 1909.

This court, by decree dated August 3, 1909, thereupon appointed Mr. Marlatt as special master to ascertain and report an account of the gains, profits, and advantages which the defendant had made by reason of said infringement, and also of the damages that complainant had suffered by reason thereof. Later the Consolidated Expanded Metal Companies was permitted to intervene as a complainant, on the ground that it was a licensee of the original complainant for a part of the territory in which defendant had infringed, and was therefore entitled to all of the recovery made herein in excess of royalties due under its license to the original complainant. Its proportion of the recovery is stated by the master (page 27), and no question arises on the hearing respecting this finding, or the proper division of the ultimate recovery, if any, between the two complainants.

The period of time included in this accounting is from the early part of 1904, when defendant's infringement began, to August 20, 1909, when it ended, a period of approximately 5 years and 7 months. The patent in question covers a process for making what is known as expanded sheet metal. During all this period of time the defendant used the process covered by complainant's patent, and is liable as an infringer for all the expanded sheet metal made by that process. The master finds that defendant made 7,618 tons of expanded sheet metal under 22 gauge and over 7 gauge, 347 tons of 22 gauge, and 9 tons of metal of 7 gauge. He allows complainant, as damages, the sum of $2.50 per ton on the first item, $4 per ton on the second, and $1 per ton on the third, making an aggregate of $20,442. This allowance is based on a finding that an established and uniform royalty is shown by the evidence at those rates for the use of the patented process in making expanded sheet metal. He further finds that complainant is entitled to interest thereon from the date the royalties would have been due complainant, had defendant been operating under a license similar to that granted to other licensees; also that defendant was not such a wanton infringer as warrants the trebling of these damages, and that, inasmuch as the profits made by the defendant are in excess of complainant's damages, complainant is not entitled to recover these damages in addition to said profits. He further finds that defendant has made profits, by reason of said infringement, in the sum of $61,867.81.

Complainant has taken 7 exceptions to the master's report. The defendant has taken 21 exceptions. These exceptions relate both to the finding of damages and of profits. I shall first consider the exceptions of both parties on the subject of complainant's damages.

Complainant excepts because the master refused to add the damages to the profits, and on this hearing also insists that the damages should be trebled (7th exception, master's printed report, 29; complainant's brief, 107). Defendant's exceptions to the finding of damages raise in different ways the question only of whether or not a sufficient showing is made of a fixed and uniform license system to furnish a basis of damages (exceptions 1 to 7, Master's Printed Report, pp. 65, 66).

[1] 1. I am of opinion that the master did not err in his conclusion of law that complainant is not entitled to recover damages in addition to profits.

As already stated, he finds the damages to be $20,442, and the profits $61,867.81, and if these findings are sustained complainant is not entitled to have the profits increased by adding thereto the other sum. It is only when the profits found are less than complainant's actual damages that a sum is added to profits in order to make the recovery equal to actual damages. It is true, as contended, equity now has, under section 4921, R. S., as amended in 1897 (Comp. St. 1916, § 9467), jurisdiction to assess actual damages of the plaintiff, as well as to ascertain defendant's profits; but this power does not permit an award of double compensation, but only permits an election to award

the larger sum. This actual damage may be trebled or increased under the authority of this section; but that is a different question. An examination of all the authorities cited convinces me that the rule adopted by the master is the correct, if not the uniform, rule. See the following: Walker on Patents (5th Ed.) § 573; 3 Robinson on Patents, § 1154; Birdsall v. Coolidge, 93 U. S. 64, 23 L. Ed. 802; Tilghman v. Proctor, 125 U. S. 136, 143, 8 Sup. Ct. 894, 31 L. Ed. 664; Yesbera v. Hardesty Mfg. Co. (6 C. C. A.) 166 Fed. 120, 127, 128, 92 C. C. A. 46; Dunn Mfg. Co. v. Standard Computing Scale Co. (6 C. C. A.) 204 Fed. 617, 624, 123 C. C. A. 111. Other cases to the same effect are cited by counsel for defendant, and an examination of them shows that they are in accord with the master's ruling. Among the cases cited in support of complainant's contention, I find none which, in my opinion, sustains it, except, perhaps, Fox v. Knickerbocker Engraving Co. (C. C.) 140 Fed. 714, decision by District Judge Hazel, and Continuous Glass Press Co. v. Schmertz Wire Glass Co., 219 Fed. 199, 135 C. C. A. 85, decision by the Circuit Court of Appeals, Third Circuit. It is not clear that either of these cases hold what is claimed for them; but, if they are susceptible of that construction, I am persuaded that they are not in accordance with the correct rule.

[2] 2. I am also of opinion that there is no error in the master's ruling that the damages found should not be trebled. This finding of the master was not excepted to. It is probable, therefore, that complainant is not in a position to urge this proposition. Waiving this objection, however, and treating the application as if it were now made in the first instance to this court, to exercise the discretion given by section 4921, R. S. (Comp. St. 1916, § 9467), either to treble or to increase the damages found, I am of opinion that such an application should be denied.

The defendant, before making use of the infringing process, obtained the advice of several counsel learned in the law, who advised that its conduct would not be an infringement or violation of complainant's patent. During the entire period of infringement there were decisions of federal courts of high authority holding that complainant's patent was invalid, and that defendant's acts were not an infringement of it. These conflicting opinions of court and counsel were not finally settled until the decision of the United States Supreme Court June 1, 1909. Nothing appears to impeach the defendant's good faith, or to warrant a belief that it was doing anything else than exercising what it believed to be its legal rights. No element of wantonness appears in its acts or conduct. In this situation damages should not be trebled, nor any sum added as punishment or for complainant's expense of litigation. Walker on Patents (5th Ed.) § 367.

[3] 3. I am of opinion that the master did not err in finding that an established royalty was shown by the evidence, nor in his conclusion of law that the same is to be taken as the measure of complainant's damages. The master's findings of fact on this issue are set forth at pages 3–11 of his printed report. The patent, as already stated, is for a method or process of making expanded sheet metal. Complainant did not

manufacture, but was merely an owner of patents, and granted licenses to others to make use of the process. In these licenses the royalties were always measured by a certain rate per ton of sheet metal expanded by the process in question.

Defendant's infringement began in 1904. Several licenses had been granted prior to this time. In August, 1887, one was granted to Chess, Cook & Co. for the states of New York, Pennsylvania, New Jersey, Delaware, West Virginia, and Ohio; one was granted in May, 1896, to the Southern Expanded Metal Company for the states of Maryland, Virginia, North Carolina, South Carolina, Georgia, Florida, and the District of Columbia; another was granted in August, 1903, to the New York Engineering Company for the states of Maine, New Hampshire, Vermont, Massachusetts, Connecticut, and Rhode Island; later, in April, 1905, another license agreement for this same territory was granted to the Eastern Expanded Metal Company. Two others, not produced at the hearing, had also been granted prior thereto: One to the Western Expanded Metal Company at San Francisco, and the other to the St. Louis Expanded Metal Company at St. Louis. The exact dates of these two licenses and the territory included therein, are not definitely shown. They had been canceled or terminated prior to the beginning of defendant's infringement.

In the early days of the patent all licensees were charged a uniform royalty of $5 a ton on all expanded sheet metal made by the process. Some licenses may have provided for the payment of $10 a ton, with a discount or rebate of $5 a ton. In effect, however, the rate in all was $5 a ton. Later, and prior to the beginning of defendant's infringement, the license fee was reduced and graded, and the prices fixed and established were as found by the master, namely, $2.50 a ton on all expanded metal under 22 gauge, $4 a ton on all over 22 gauge, and $1 a ton on all of 7 gauge. These prices, the master finds and the evidence shows, were the uniform and prevailing rates between the complainant and all its licensees during the entire period of infringement.

On behalf of defendant it is urged that this showing is insufficient, for two reasons: (1) That the license agreements included other patents for expanded sheet metal; and (2) that they were exclusive licensees. It is true other patents were included in these licenses. It is also true that they were exclusive licensees, in the sense that each licensee had the exclusive right to manufacture, sell, and use within the territory set forth in his license agreement. The master, however, finds that only one patent was used at any one time in expanding any sheet metal product; that the Golding and Durkee process, much used prior to complainant's invention, and during the early period of these licenses, went gradually out of use; that the licensee, whether he used one process or the other, paid uniformly the full license fee upon all the product produced by either process, and particularly by the process infringed by the defendant; that no two patents were used and available, or intended for use, concurrently in producing any part of the product; that as the earlier patents expired, leaving only complainant's patent in force, the same royalty was maintained and continued in force. In

point of fact, the patent for the Golding and Durkee process expired in 1902. It was the only other process used in expanding sheet metal. The rate of royalty found by the master was continued and paid thereafter, and during the period of infringement, when complainant's patent alone was the only unexpired patent. In view of these facts, the master is of opinion that no other consideration, except the right to use the patented process, entered into the payment or agreement to pay, at least since 1902, the license or royalty fee found by him.

These facts as found are not challenged. The inference therefrom that a fixed, uniform royalty is sufficiently shown to make it a basis for determining complainant's damages is, however, challenged by defendant's first 7 exceptions. I am of opinion that the master's conclusions are correct and should be sustained.

Counsel for defendant cite in support of their contention the following: Moffitt v. Cavanagh (C. C.) 27 Fed. 511; Colgate v. Western Mfg. Co. (C. C.) 28 Fed. 146; Bell v. United States Stamping Co. (C. C.) 32 Fed. 549–551; Hunt Bros. Fruit Packing Co. v. Cassiday, 53 Fed. 257, 3 C. C. A. 525; American Sulphite Pulp Co. v. De Grasse Paper Co., 193 Fed. 653, 113 C. C. A. 521. These authorities, it is said, hold that, when other patents are included, and when the licenses are exclusive they are not a just measure of the right acquired or taken by a wrongful infringer; in other words, that different things are being valued, and one is not the proper measure of the value of the other. Manifestly the licensee's payment should be made for a right substantially similar to that which the infringer wrongfully appropriated; otherwise, one cannot be said to be the fair market value of the other. A substantial similarity or equivalency between that for which the licensees were paying and that which the defendant appropriated does, however, appear on the facts as found. The payments of complainant's licensees were made for the right to use complainant's process in expanding sheet metal. This is precisely what the defendant wrongfully appropriated. It is true that the royalty payments were made under agreements which purported to give an exclusive right in a limited territory, but the exclusive force and effect of this right is, for practical purposes, much less than is contended. Keeler v. Standard Folding Bed Co., 157 U. S. 659, 15 Sup. Ct. 738, 39 L. Ed. 848. Defendant appropriated and exercised a right to manufacture, use, and sell equal to any other licensee; indeed, as is justly observed by the master, it exercised the right of selling throughout the entire United States. And it is also true, as observed by the master, neither defendant nor any one else ever did or could have acquired a license at a lower rate. On these facts, the royalties paid by complainant's licensees are to be taken as the correct measure of complainant's damages for defendant's wrongful infringement. These facts satisfy the settled rule under which a fixed and uniform royalty is made the measure of value of the patentee's right which defendant has wrongfully taken. Walker on Patents (5th Ed.) §§ 556–562. Nor is the royalty or license fee to be regarded as wanting in uniformity because it was higher in the early days, and later reduced to the basis adopted by the master. The fee had reached this

reduced basis before defendant began to infringe, and it was not reduced during the period of the infringement. In American Sulphite Pulp Co. v. De Grasse Paper Co., supra, it was held, on somewhat similar facts, that the patentee is entitled to recover damages based upon the lowest rate of license fee charged and collected at the time of the infringement, and, with a stronger reason, the lowest license fee at the time of defendant's infringement should be taken as that measure, when it remains the prevailing rate during the period of infringement.

Moreover, the master's finding of damages should, in my opinion, be sustained, even if this proof of an established royalty is, in some respects, insufficient to satisfy legal requirements. Certainly on these facts the rule of a reasonable royalty or general damages justifies an award of this sum. See United States Frumentum Co. v. Lauhoff, 216 Fed. 610, 617, 132 C. C. A. 614; Dowagiac Mfg. Co. v. Minnesota Plow Co., 235 U. S. 641, 35 Sup. Ct. 221, 59 L. Ed. 398.

Complainant's seventh exception and defendant's first 7 exceptions will therefore be overruled. Complainant's request to treble or increase the damages as found will be denied. I shall now proceed to a consideration of complainant's and defendant's exceptions to the master's finding that defendant's profits for the wrongful infringement are $61,867.81.

No exception is taken to the finding of the master as to the quantity of metal expanded by the use of the infringing process, nor as to the gross receipts of the defendant from its sale of the product. Complainant excepts, however, to a credit item allowed by the master of $90,417.-66 for alleged expenses or losses of marketing expanded sheet metal in branch offices (exceptions 1 and 2, master's printed report, p. 28); also because the master allowed a credit item of $16,569.90 for interest on bills payable, instead of $9,113.11 (exception 4); also because the master allowed a credit item of $18,427.34 for depreciation, and an item of $1,032.91 for miscellaneous expenses.

On this hearing, the exceptions as to the two items last mentioned are not pressed (Complainant's Brief, p. 7). The fourth exception, relating to interest on bills payable, it is conceded should be overruled unless the item of $90,417.66 is disallowed (Complainant's Brief, p. 75). Complainant's exceptions to the master's report of profits is therefore reduced to the single item of $90,417.66, alleged expense for marketing product in branch offices.

Defendant has taken 14 exceptions to the master's report (pages 66–78). These exceptions present, however, only two questions for consideration: (1) The refusal of the master to allow an item of $33,684.68, interest on capital invested, for which credit was claimed; and (2) the allowance by the master of the entire profits made by defendant from the sale of the infringing product—it being contended that he should have allowed the sum of 60 cents a ton only, aggregating $4,784.40, which, it is said, is the profit or advantage obtained by using the infringing process over other processes open and available for use by defendant. These several exceptions will be briefly considered in their order.

[4] 1. This item of $90,417.66, alleged expense of marketing product through branch offices, is discussed in the master's report at pages 18–20. His finding of facts is in part challenged. It is said that there is no sufficient evidence to show that the defendant agreed with Messrs. Garretson and Ramsey, or with the Expanded Metal Fireproofing Company, in which name some of the business was done, that defendant would bear the losses of these branch offices. An examination of the evidence shows that the testimony in this respect is somewhat weak. In all other respects the master's finding of facts is, in my opinion, adequately supported. These branch offices, it appears, were established primarily to promote the sale of expanded sheet metal in reinforced concrete construction; that the defendant advanced to and expended on account of these branch offices large sums of money; that these sums were carried upon its books in a separate account and credited with all receipts from these offices; that they were treated and considered by defendant as an expense of the expanded sheet metal branch of its business.

Defendant's reasons for establishing these branch offices and making these expenditures were, in brief, that the use of expanded sheet metal in reinforced concrete construction was then in an experimental stage; that other materials were in existence and used in competition with it; that architects and engineers were doubtful as to the strength and efficiency of expanded sheet metal; that, in order to introduce it, guaranties of its strength and efficiency were necessary; that architects and engineers would not accept a guaranty from defendant for expanded sheet metal alone, but required guaranties covering the completed structure; that, in view of this situation and these difficulties, these branch offices were established for the purpose of taking construction contracts and engaging in the construction of buildings from time to time, in which expanded sheet metal was used for reinforcing purposes. All this was done for the purpose of promoting and introducing expanded sheet metal and overcoming objections made to its use, and the item in question represented the excess of expenditures over receipts in that department of defendant's business.

These, in substance, are the main facts found by the master. He is of opinion that these expenditures were legitimate, stand on the same basis as advertising, employing salesmen, erection of sample buildings, are to be regarded as a reasonable expense incident to the sale by defendant of the infringing product, and should be deducted from its gross receipts.

In this conclusion of the master I concur. It may be true that there was no distinct agreement between defendant and the managers of these branch offices that defendant should bear the loss and the managers take the entire profits. It is undoubtedly true that, at the time and prior to the hearing before the master, this item was regarded by defendant in the light of bad debts and actual losses in business. In fact, there is testimony that the Expanded Metal Fireproofing Company, in which name Mr. Ramsey conducted a branch office, had become a bankrupt early in 1907 (see Pitkin's testimony, Printed Record,

p. 226). This testimony was presented and claim made by defendant for this item as early as 1910. Complainant employed Mr. Ernst, an able public accountant, who spent several months examining defendant's books. After this examination he testified at length, criticizing in other respects the statements submitted by defendant, and, as a result of his criticisms, some corrections were made therein. He did not, however, criticize this item. Complainant's silence and acquiescence during this period is not consistent with its vigorous contention, made two years later, that these expenditures are wholly unwarranted and groundless.

It may be true, as is now contended, that defendant's business methods were unwise; that, being an Ohio corporation, it had no right to guarantee construction contracts made by a branch office in which its own capital was not invested, or that its expenditures and losses on account thereof were unreasonable and unnecessarily large. The fact remains that such expenditures were made and such losses were incurred, and it is immaterial whether they were made or incurred under a contract to bear the losses, or whether the money was expended or advanced to these branch offices and thereby lost. Defendant is required to account only for the profits actually made by its use of the infringing process. Complainant is not entitled to recover profits which the infringer might or should have made, had it conducted its business in a different manner. Criticism of this item reduces itself to an assertion that defendant's action was illegal; that it was unwise and unnecessary; that, had it acted otherwise, its profits would have been larger, and its losses would have been less; but this does not show that defendant made greater profits than the master has found, or that defendant did not make or sustain these expenditures or losses in a good-faith effort to promote and develop the use and sale of the infringing product in building construction.

For these reasons complainant's exceptions will be overruled.

[5] 2. I am of opinion that the master did not err in refusing to allow defendant credit for the item of $33,684.68, interest on capital invested. The reasons for disallowing this item are so well stated by the master (pages 23–26) that I deem it necessary only to say that I concur as well in his reasoning as in his conclusion. The Circuit Court of Appeals of this Circuit in Kissinger-Ison Co. v. Bradford Belting Co., 123 Fed. 91–94, 59 C. C. A. 221, applies the rule of Rubber Co. v. Goodyear, 9 Wall. 789, 19 L. Ed. 566, and Seabury v. Am Ende, 152 U. S. 561, 14 Sup. Ct. 683, 38 L. Ed. 553, in the same way as the master. In my opinion, the reasoning of Mr. Justice Swayne in Rubber Co. v. Goodyear, supra, admits of no other construction. The Court of Appeals of the Seventh Circuit, it is true, in Western Glass Co. v. Schmertz Wire Glass Co., 226 Fed. 730, 141 C. C. A. 486, allows an item of this nature, interpreting these same cases as authority for so doing. This it seems to me is wrong, and in conflict with Kissinger-Ison Co. v. Bradford Belting Co., supra. Supporting the master's conclusion, also, is the reasoning of Callaghan v. Myers, 128 U. S. 663, 9 Sup. Ct. 177, 32 L. Ed. 547, in which an allowance from earnings to members of a partnership, who had performed services for the firm

in connection with its business, was disallowed on the ground that such payments were in part to be regarded as profits and not for services.

[6] 3. Defendant's further contention that the master should not have allowed its entire profit on the product made by the infringing process, but only the gains or advantages of its use over the Golding and Durkee process, sometimes called the "old" process, or the use of the "corrugated" process, presents a problem not easy to solve. The process covered by complainant's patent was used exclusively in producing the products; no other patent or process was used. Upon these facts, nothing else appearing, the infringer is liable for the entire profits. This, we understand, is not denied by defendant.

In defendant's brief, however, it is urged that complainant's patent was for a process, and not for a product; that its patent did not cover expanded sheet metal as a product, but only a process for making it; and that, therefore, the defendant was at liberty to make expanded sheet metal by any process which did not infringe complainant's process. This, of course, is true. In this situation it is said the correct measure of damages is the gains or advantages which the infringer derived from using the patented process in comparison with the use of any other means or process open to the public and adequate to enable him to obtain an equally beneficial result. This is undoubtedly the law.

The question is: Which rule should, on the facts here present, be adopted and applied? Upon an examination of the cases cited, and a weighing of all considerations making for and against defendant's position, I have reached the conclusion that the master's finding should be sustained. The master states (pages 11–18) his findings of fact and his reasons for his conclusions, to which reference is made.

Defendant asserts that two other processes were open to it—one being the "old" process, covered by the Golding and Durkee patent, which had expired in 1902; and the other, called in the record the "corrugated" process, developed or invented by H. E. White, defendant's engineer. The Golding and Durkee process was open to defendant, but the master finds that it was not adequate to enable defendant to obtain an equally beneficial result. Defendant evidently was of the same opinion; otherwise, it would undoubtedly have used it. The master finds that the product produced by the Golding and Durkee process was not the same product as that produced by the infringing process; in other words, that the product of the infringing process could not have been made and produced by the Golding and Durkee process. The difference in the two products is set forth so fully in the master's report and in Expanded Metal Co. v. Bradford, 214 U. S. 366, 29 Sup. Ct. 652, 53 L. Ed. 1034, that I deem it unnecessary to restate it. It is sufficient to say that I concur in the master's conclusion.

The master's conclusion in this respect should also be sustained for a further reason. No evidence was offered showing the cost of producing expanded sheet metal by the Golding and Durkee process. This the defendant concedes (see Defendant's Brief, p. 56). Prima facie complainant had made a showing which entitled it to recover all the profits on the infringing product; the burden was upon the defendant to show the existence of another process, and the difference between the cost of

producing the product by it and by the infringing process. For this reason, also, the master's finding should be sustained. Westinghouse Co. v. Wagner Mfg. Co., 225 U. S. 604, 32 Sup. Ct. 691, 56 L. Ed. 1222; Schmertz Wire Glass Co. v. Western Glass Co. (D. C.) 203 Fed. 1006; Western Glass Co. v. Schmertz Wire Glass Co., 226 Fed. 730, 141 C. C. A. 486.

The "corrugated" process was devised by H. E. White, an engineer in the employ of the defendant, late in 1903 or early in 1904. At that time the defendant was preparing to engage in the business of making expanded sheet metal, and White testifies that he devised this process for the purpose of avoiding infringement. At that time the Golding and Durkee patent had expired, and the only other process in existence and subject to infringement was complainant's process. In 1904 the "corrugated" process was used only in an experimental way, evidently with a view to perfecting it. In 1905 a machine was set up and used for expanding sheet metal by this process. It was, however, used only for two or three weeks, and only 8 or 10 tons of metal expanded by it. In 1906 a few sheets only were expanded. In October, 1909, after the injunction was awarded in this case, it was put into use by defendant, and continuously used until January, 1912, during which period 2,207 tons of metal were expanded. In January, 1912, after complainant's patent had expired, defendant then shifted back to complainant's process, and thereafter discontinued and abandoned the use of the "corrugated" process.

The master finds that the product produced by the "corrugated" process is essentially different, and that the infringing product could not have been produced by it. This essential difference, he finds, is that the strands of the meshes are stretched in the complainant's process, and that the strands in the "corrugated" process are not stretched, but merely bent. This finding is much criticized. It is said that the stretching of strands was present in the Golding and Durkee process; that it was held not to be a patentable feature of any process by the United States Supreme Court, in its opinion in Expanded Metal Company v. Bradford, supra; that stretching was a disadvantage, and not a benefit, and was, in fact, obviated by annealing expanded sheet metal thus made before offering it for sale. Undoubtedly the strands are stretched in all three processes; but what the master had in mind, no doubt, was the stretching in an elongated manner, so as to keep the expanded metal as produced equal in length to the sheet from which it was being cut. This was a manifest advance of complainant's process over the Golding and Durkee process. On behalf of defendant, it is further said that expanded sheet metal, made by the "corrugated" process, is indistinguishable from that made by complainant's process; that only an expert could tell the difference, and he only with the aid of a microscope; and that, in fact, defendant's product made by this process went into the same stock with its other product, and was sold and accepted by customers indiscriminately.

[7] If my decision were to rest on the differences between the two products, or the question of whether or not the corrugated process was adequate to produce the same product as is produced by complainant's

process, it would be difficult to sustain the master's conclusion. Other considerations, however, are present, which bring me to the same conclusion as the master. I am of opinion that a process yet in the experimental stage, and developed for the purpose only of avoiding infringement, made at or after the appropriation by the infringer of the other's process, and covered by a patent to itself—that is, used experimentally and occasionally only during the infringing period, or only under compulsion of an injunction, and abandoned as soon as the infringer is at liberty to change back—does not make a case of another existing process, or means, open to the public and to the defendant, or constitute a basis of comparison in determining the gains and advantages from the use of the infringing process over other processes.

In Walker on Patents (5th Ed.) § 725, it is said that the other article or process to be used as a basis of comparison must have been known or in existence prior to the date of the patent which is infringed; in other words, that the standard of comparison must have been known in the art prior to the complainant's invention. In Turrill v. Illinois Central R. R. Co. (C. C.) 20 Fed. 912, it is explicitly stated that the process or article to be used as a basis for comparison must have been open to the public at the date of the patent which is infringed. Many excellent reasons are advanced in the opinion in support of this conclusion. The judgment in this case was affirmed by the United States Supreme Court in Illinois Central R. R. Co. v. Turrill, 110 U. S. 502, 4 Sup. Ct. 5, 28 L. Ed. 154. In Sessions v. Romadka, 145 U. S. 29, 45, 12 Sup. Ct. 799, 803 (36 L. Ed. 609), Mr. Justice Brown says:

"This court has, however, repeatedly held that in estimating damages in the absence of a royalty it is proper to consider the savings of the defendant in the use of the patented device over what was known and in general use for the same purpose anterior to the date of the patent."

An examination of McCreary v. Pennsylvania Canal Co., 141 U. S. 459, 464, 465, 12 Sup. Ct. 40, 35 L. Ed. 817, convinces me that it is not in conflict with this statement of the law.

Defendant contends that any article or process available to an infringing defendant at any time may be used as a basis of comparison. Strong reasons are advanced why the date of complainant's patent should not be taken in determining the process open or available to the public or defendant. Whether these reasons should prevail over the reasoning of the learned judge in Turrill v. Illinois Central R. R. Co., supra, I deem it unnecessary to express an opinion. I am of opinion, however, from an examination of all the cases cited, that the other available process must have been in existence and open to public use in its completed form at the time the infringer appropriates a patented process; he should not be permitted to avail himself of inventions developed by himself or others after he has appropriated another's property for the purpose of mitigating or avoiding the damage thus inflicted on another.

Much reliance is placed by defendant on Columbia Wire Co. v. Kokomo Steel & Wire Co. (7 C. C. A.) 194 Fed. 108, 114 C. C. A. 186. This case, it is said, holds that another process developed after the

wrongful appropriation and during the period of infringement, may be used as a standard of comparison. I do not so understand it, nor was that question involved in the case. The article used as a basis was in existence at the beginning of the infringement. In the opinion it is said, and the master's finding was, that an infringer is only to pay for the advantages of the patented machine over machines that were open to his use at the time of the unlawful appropriation, and not to pay for the advantages of the patented machine over machines that were open at the date of the patent. The question of whether the infringer would be permitted to avail himself of developments in the art subsequent to his unlawful appropriation as a defense in an accounting is expressly stated not to be involved. The reasoning of the opinion (194 Fed. 110, 114 C. C. A. 188) induces the belief that, if the latter question had been before the court, the holding would have been that the infringer is entitled to no more than had been found by the master, namely, that machines open at the time of the unlawful appropriation could be made available as a basis of comparison.

This understanding of the case is supported by the later decision in the same circuit in Schmertz Wire Glass Co. v. Western Glass Co. (D. C.) 203 Fed. 1006, opinion by Sanborn, District Judge, affirmed on appeal, 226 Fed. 730, 141 C. C. A. 486. Note especially middle paragraph, 203 Fed. 1009; second paragraph, 226 Fed. 736, 737, 141 C. C. A. 492, 493. All of defendant's exceptions will therefore be overruled.

[8] Complainant's remaining exception (3) is that the master erred in overruling its motion to reopen the proofs to permit further examination of defendant's books and call witnesses on the question of whether credit should be given for the item of $90,417.66, or any part thereof, alleged expense of branch offices. It also has submitted on this hearing a motion, supported by affidavits and exhibits, asking the same relief.

The hearing before the master was begun in September, 1909. All the testimony was completed May 22, 1913. Complainant had been given full access to defendant's books and records. After defendant had submitted its statements, as required, and its officers had been fully examined and cross-examined with respect thereto, complainant caused a competent expert accountant to make an examination at length of defendant's books and records. Very few errors or inaccuracies were found by him in the statements previously submitted by the defendant, and no criticism was made by him of this item or any part of it.

The case was argued, and briefs filed and submitted to the master for decision, June 24, 1914. The master's draft report was sent to counsel in February, 1915. The final hearing before the master on the draft report was had June 29, 1915. It was at this hearing that the complainant first submitted its motion and made its request to reopen the case. The request then made was that leave be given for a further examination of defendant's books, and to call further witnesses, if necessary, upon the allowability of the item of $90,417.66 for expenses of marketing produce in branch offices. Manifestly the master did not abuse

his discretion in refusing this request, made at this late date. This exception will therefore be overruled.

[9] Complainant's motion, however, involves different considerations. It represents that all or some part of this item of $90,417.66 has been recovered or reimbursed to the defendant since the making up by the master of his report, or, at least, since the taking of the testimony before the master. If this be true, it would be manifestly unjust to permit the defendant to retain it, for this item was deducted from the profits made by the defendant only on the hypothesis that it was a loss sustained in the conduct of these branch offices. If subsequent events have proved that all or a part of it was not a loss, but, on the contrary, all or some part of this item has been collected from the managers of the branch offices, or from persons owing the branch offices, the money thus collected is, in equity and good conscience, the money of the complainant; in fact, an action for money had and received by the defendant for the complainant's use might, on these facts, be maintained at common law. Certainly in a court of equity the defendant will be regarded, as to such collections, if any, as a trustee for the complainant. On this hearing defendant agreed to this contention, denying only that any reimbursements had been made to it. (Mr. Neave's Reply Brief, p. 7, paragraph beginning "Pages 44–75.") The affidavits and exhibits accompanying this motion make it probable that a part of these losses have since been collected back by defendant. Some of the collections apparently cover operations of a date subsequent to the period of infringement. In view, therefore, of complainant's contention, and the prima facie showing made by it, I am of opinion that a further inquiry should be made in this cause on this subject. The report should not be set aside or reopened, or a further inquiry made as to any matters determined thereby, for as to all such matters complainant has had its day in court. The inquiry to be made will be strictly limited to an ascertainment as to whether or not the defendant has received or collected from any source all or any part of the item of $90,417.66, for which it obtained credit on profits derived from the infringing process as losses incurred in connection with its branch offices. This course is in accord with the practice pursued in the following cases: United States Frumentum Co. v. Lauhoff, 216 Fed. 610, 132 C. C. A. 614; Westinghouse Mfg. Co. v. Wagner Mfg. Co., 225 U. S. 604, 32 Sup. Ct. 691, 56 L. Ed. 1222; Dowagiac Mfg. Co. v. Minnesota Plow Co., 235 U. S. 641, 35 Sup. Ct. 221, 59 L. Ed. 398.

A decree will be entered in conformity with the conclusions herein expressed.